## Commonwealth *v.* Barrett, Appellant.

524

Submitted December 6, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*William F. Ochs, Jr.,* Assistant Public Defender, for appellant.

*Grant E. Wesner,* Deputy District Attorney, and *Robert L. VanHoove,* District Attorney, for Commonwealth, appellee.

OPINION BY VAN DER VOORT, J., March 31, 1975:

Appeal is taken to this Court from judgment of sentence rendered by Judge Warren K. HESS following jury verdict of guilty of possession with intent to deliver a controlled substance[1] and conspiracy.[2] Previous to the September 27, 1973, trial, a suppression hearing had been held on September 6, 1973, before Judge Frederick EDENHARTER, wherein appellant sought to suppress evidence obtained by means of search warrants for the body of appellant and for the automobile which he was using at the time of arrest. Post-trial motions were filed, argued, and denied.

Based upon affidavits[3] of one Jere Verdone, a Reading, Pennsylvania, police officer, District Justice Ralph B. BRENEISER issued search warrants for the body of appellant and for a "Cadillac Sedan" in which appellant, one Theodore Covel and *"two other unknown persons"* were known to be riding. On April 30, 1973, at approximately 9:00 P.M., in the City of Reading, Pennsylvania, said vehicle was stopped, and the warrants were executed upon the car and appellant. Occupants were appellant and his two co-defendants below, Covel and Anthony Spade. Evidence was seized which later proved to be

---

1. A violation of "The Controlled Substance, Drug, Device and Cosmetic Act," Act of 1972, April 14, P.L. 233, No. 64, §13 (a) (30), 35 P.S. §780-113 (a) (30).

2. A violation of the "Penal Code," Act of 1939, June 24, P.L. 872, §302, 18 P.S. §4302.

3. The affidavit for each is the same as to its language regarding criminal activity.

heroin, packaged in 169 glassine bags, each bag containing approximately 100 milligrams of the substance. Appellant and the others were held for preliminary hearing and charged with the aforestated crimes.

Appellant challenges the existence of probable cause for the Magistrate's issuance of both a body and an automobile search warrant and alleges that said lack of probable cause in the affidavit should have served below as grounds to suppress evidence of crime, to-wit, 169 glassine bags of heroin found in the Cadillac automobile in which appellant and two co-defendants were riding. The six paragraph affidavit provided to the Magistrate becomes the focus of our study.

When a law enforcement officer applies for a search and seizure warrant he makes an affidavit before an issuing authority. When the information in support of the issuance of the warrant has been received in substantial part from an informer, the issuing authority must be able to determine from the contents of this affidavit that the officer knows "the underlying circumstances from which the informer concluded that the suspect possessed the fruits or evidence of a crime" and that the officer has "some reasonable basis for concluding that the source of the 'tip' was reliable". *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964), *Commonwealth v. Milliken,* 450 Pa. 310, 300 A.2d 78 (1973), or as we said in *Commonwealth v. Cosby,* 234 Pa. Superior Ct. 1, 6-7 (1975), the statement of facts given by the officer must be "sufficient to enable the issuing authority to make two independent judgments:

(1) That the affiant is probably correct in his belief that the informer is reliable; and

(2) That the information received from the informer is probably reliable."

Such facts being set forth in the affidavit the issuing authority may conclude that probable cause exists for the issuance of the search and seizure warrant.

The affidavit[4] establishes that the affiant, Police Officer Lt. Verdone received information from three different informants and in addition had some personal knowledge pertinent to proof of probable cause. To facilitate clarity of expression, the informants will be referred to as informant No. 1, the one referred to in paragraph (1) of the affidavit; informant No. 2, the one referred to in paragraph (3) and informant No. 3, Officer Schwartz referred to in paragraph No. 4.

Informant No. 1 told Lt. Verdone that two men were involved in narcotic drug traffic in the City of Reading. He gave Officer Verdone the following details: that their names were Theodore Covel and "Tiny" Barrett, that these two men were in a partnership to sell heroin, that they are selling it in the City of Reading, that the two of them are buying heroin in Philadelphia, that they pick it up by driving a car there; that appellant was using a black Cadillac sedan of approximately 1969 vintage and that appellant's real name is James Barrett. This information was given to Lt. Verdone on April 27, 1973 and the application for the search warrant was made on April 30, 1973.

Both Covel and the appellant were known personally to all members of the Reading Vice Control Division as persons who had been involved in narcotic drug traffic.

Informant No. 2 told Officer Hymon of the Reading Police Department at about 6:00 P.M., on April 30, 1973, that Theodore Covel and Tiny Barrett have made a trip out of town to get heroin and bring it back to Reading for resale; that the two men left that same afternoon but he did not know the exact time. Officer Hymon related this information to Lt. Verdone.

Informant No. 3 was Officer Schwartz of the Pennsylvania Turnpike Police. He informed Lt. Verdone that he personally observed a black Cadillac sedan which had a

---

4. The full text of the affidavit appears in the Appendix affixed at the end of this Opinion.

temporary Pennsylvania registration plate and had four occupants in the car, entering the turnpike at 4:45 P.M. on April 30, 1973, through the Morgantown toll gate headed for Philadelphia. Officer Schwartz described two of the occupants precisely, which descriptions were those of Theodore Covel and Tiny Barrett.

The affidavit establishes that Lt. Verdone had a reasonable basis for concluding that informant No. 1 was reliable for the reason that the same informer had on two other occasions within the past week provided Lt. Verdone and another agent of the Pennsylvania Bureau of Drug Control information relative to traffic of narcotic drugs in the City of Reading and related activities of suspected drug sellers, which information was checked out and found to be accurate.

As to informant No. 2, while there is no recital as to his past performance, it is reasonable to infer that inasmuch as he was corroborating two other reliable informants, he also was reliable.

As to informant No. 3, the Pennsylvania Turnpike Officer Schwartz, his employment and position form a reasonable basis for concluding that the information he supplied was reliable. The one test required by *Aguilar* and *Milliken* relating to the reliability of the informers is met.

The informers, individually and collectively, gave underlying circumstances to Lt. Verdone, the affiant. Informer No. 1 gave the full names of the suspects, together with the nickname of appellant. He stated that the two suspects were in partnership to sell heroin, that they were in fact selling it in the City of Reading, that they bought the heroin in Philadelphia where they would pick it up by driving a car to Philadelphia and that the appellant was using a black Cadillac of the approximate year 1969. Informant No. 2 provided information that the two suspects, giving their names, had made a trip out of town to get heroin and to bring it back to Reading for re-sale,

that this trip was sometime in the afternoon of April 30, 1973, but the exact time was not known. Informant No. 3 provided information that a black Cadillac sedan bearing a temporary Pennsylvania registration plate, having four occupants in it, of which two of the occupants fit the precise description of Covel and Barrett had entered the Pennsylvania Turnpike at the Morgantown toll gate at 4:45 P.M. on April 30, 1973, headed for Philadelphia.

From all these underlying circumstances, Lt. Verdone could justifiably believe that informer No. 1 had properly concluded that appellant and the Cadillac automobile would upon its return to Reading possess evidence of a crime.

Appellant complains that part of the information supplied by the informers was hearsay. Hearsay evidence may be properly considered by a Magistrate in determining probable cause when it is substantiated: *United States v. Harris*, 403 U. S. 573, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971) ; *Commonwealth v. Ambers*, 225 Pa. Superior Ct. 381, 310 A.2d 347 (1973). We said in *Ambers* that there are four bases to be considered in crediting hearsay; *Commonwealth v. Falk*, 221 Pa. Superior Ct. 43; 46-47, 290 A.2d 125, 126-127 (1972). These factors are as follows:

"(1) Did the informant give prior reliable information?

(2) Was the informant's story corroborated by any other source?

(3) Were the informant's statements a declaration against interest?

(4) Does the defendant's reputation support the informant's tip?"

In the present case the principal informant, informant No. 1 had given prior reliable information. Each of the informant's stories was corroborated by other sources and the (defendant-appellant's) reputation supported the informant's tips. In regard to appellant's reputation the

affidavit established that both appellant and Covel were personally known to the Reading Vice Control Division as persons who have been and are involved in the narcotic drug traffic in the City of Reading.

Lt. Verdone knew that in April of 1971 appellant was reputed to be a partner with one Stewart in the operation of heroin traffic and he also knew that Theodore Covel had a prior conviction for heroin in New York City and had been a constant user of heroin while a resident of Reading except for the times when he was using a substitute drug. A police officer's knowledge of a suspect's reputation is an element which an issuing authority may consider in determining the credibility of hearsay. Chief Justice BURGER in *United States v. Harris*, 403 U.S. 573, stated at page 583 as follows:

> "We cannot conclude that a policeman's knowledge of a suspect's reputation—something that policemen frequently know and a factor that impressed such a 'legal technician' as Mr. Justice FRANKFURTER—is not a 'practical consideration of everyday life' upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip. To the extent that *Spinelli* prohibits the use of such probative information, it has no support in our prior cases, logic, or experience and we decline to apply it to preclude a magistrate from relying on a law enforcement officer's knowledge of a suspect's reputation."

Whatever elements of hearsay were involved in the informants' statements, they were adequately substantiated by consideration of the factors forming the bases for crediting such hearsay. Not all of the factors were satisfied. However, three of them were satisfied as to the principal informant (informant No. 1) and others were met in relation to the additional informants. All four factors need not be satisfied for the court to uphold the validity of the warrant. *Commonwealth v. Falk, supra.*

We find that the affidavit adequately supports the Magistrate's issuance of the search warrant and affirm the judgment of sentence.

CERCONE, J., concurs in the result.

## APPENDIX TO OPINION

Affidavit in Support of Search Warrant.

FOR ADDITIONAL REASONS OF PROBABLE CAUSE, SEE THE ATTACHED AFFIDAVIT RIDER.

1. In that, upon information received from a reliable and confidential police informant, who on two prior occasions within the past week, provided to Lt. Verdone and Agent Palmer of the Penna. Bureau of Drug Control Information relative to the traffic of narcotic drugs in the City of Reading and related activities of suspected drug sellers, (unlawful drug sellers,), information which was checked out and found to be accurate: the information received this date from the confidential and reliable police informant was that Theodore Covel and "Tiny" Barrett, both persons whom are known personally to all members of the Reading Vice Control Division as persons who have been and are involved in the narcotic drug traffic in the City of Reading, are in a partnership to sell heroin, and are selling heroin in the City of Reading. The informant further stated that the two are buying the heroin in Philadelphia where they pick it up by driving there by car. "Tiny" Barrett's real name is James Barrett. This informant gave this information on 27 April 73.

2. In that, upon the personal knowledge of Lt. Verdone, when on April 4, 1971, Roland Stewart was arrested by Vice Officers of the Reading Police Department and Stewart was then and there in the possession of 60 bags of heroin. Information relative to Stewart that resulted in his arrest included information to the effect that Barrett was Stewart's partner in that operation. Barrett was not arrested nor convicted of any drug violation as of this date, however.

3. In that, upon information received from Officer Hymon of the Reading Police Department at about 6:00 P.M. this date, 30 April 73, that he had received information from an informant of his that Theodore Covel and Tiny Barrett have made a trip out of town to get heroin and bring it back to Reading for re-sale. Officer Hymon also stated that his informant had stated that the two had left sometime this afternoon, but did not know the exact time.

4. In that, upon information received from Officer Schrartz (sic) of the Pennsylvania Turnpike Police that he personally observed a black Cadillac sedan, bearing a Temporary Pennsylvania Registration plate, and having four occupants in the car, went through the Morgantown Interchange Toll Gate headed for Philadelphia at approximately 4:45 P.M. this date, 30 April 73. Officer Schwartz described two of the occupants precisely, and the descriptions he gave Lt. Verdone were that of Covel and Barrett, and there is no doubt in the mind of the affiant about this.

AFFIDAVIT RIDER FOR THE ARTICLE UNDER THE CONTROL OF ONE JAMES BARRETT, 1020 PENN STREET, READING PENNA, A LATE MODEL CADILLAC SEDAN, BEARING TEMPORARY REGISTRATION PLATE, AND BEING A SEDAN, AND HAVING, AS OCCUPANTS, ONE THEODORE COVEL, JAMES BARRETT, AND TWO OTHER UNIDENTIFIED PERSONS.

5. In that, upon information received by Lt. Verdone on 27 April 73 from the informant mentioned in paragraph number one of this affidavit, said information being that Tiny Barrett was using a Cadillac sedan, color black, of approximately 1969 vintage.

6. In that, upon the personal knowledge of the affiant, that Theodore Covel has a past conviction for heroin

possession in New York City, and has been a constant user of heroin while a resident of this city, except for that period of time when he was using a substitute drug like dilaudid, a heroin substitute.

———

DISSENTING OPINION BY HOFFMAN, J.:

I dissent from the holding of the Majority.

In *Spinelli v. United States*, 393 U.S. 410 (1969), the United States Supreme Court set forth a two-pronged test by which the validity of search warrants based on information from police informants is to be judged: "First, the application [for the warrant in Aguilar v. Texas, 378 U.S. 108 (1964)] failed to set forth any of the 'underlying circumstances' necessary to enable the magistrate independently to judge the validity of the informant's conclusion that the narcotics were where he said they were. Second, the affiant-officers did not attempt to support their claim that their informant was ' "credible" ' or his information ' "reliable." ' " 393 U.S. at 413.

I do not dispute the Majority's position that the second criterion was met. Past police contact with the informants was sufficient to establish the informants' reliability in the instant case. I cannot, however, find in the affidavit any of the underlying circumstances which indicate how the informants acquired their information. The Majority points only to additional details, such as the year and make of the automobile used to transport the appellant and his co-defendants, that were not probative of appellant's participation in criminal activity. Underlying circumstances means more than readily ascertainable or visible data. *It relates to how the informant acquired his information:* "We are not told how the [police's] source received his information—it is not alleged that the informant personally observed [appellant] at work or that he had ever [personally transacted with

the appellant]. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable ..." 393 U.S. at 416. The additional detail to which the Majority points does not fill the gap. For example, the affidavit states that "Officer Hymon also stated that his informant had stated that the two [defendants] had left sometime this afternoon, but did not know the exact time." The informant's ignorance of the time of departure suggests that his information may have come from another source, other than from his personal experience. If that were the case, the magistrate and our Court are in ignorance concerning the reliability of the *informant's informant.* Further, of the four informants, the affiant knew the source of only one informant's information—"Officer Schwartz of the Pennsylvania Turnpike Police ... *personally observed* a black Cadillac sedan ..." Although the affiant knew the source of that information, the information was wholly consistent with innocent activity and, therefore, could not supplement the otherwise inadequate statement of probable cause.[1]

Because the warrant failed to set forth the underlying circumstances of the police's informants' information, it was constitutionally defective. Therefore, the search and seizure conducted subsequent to the warrant were illegal and the evidence should have been suppressed.

---

1. Cf. *Spinelli,* supra, at 414: "The first two items reflect only innocent-seeming activity and data. Spinelli's travels to and from the apartment building and his entry into a particular apartment on one occasion could hardly be taken as bespeaking gambling activity; and there is surely nothing unusual about an apartment containing two separate telephones ... Finally, the allegation that Spinelli was 'known' to the affiant and to other federal and local law enforcement officers as a gambler and an associate of gamblers is but a bald and unilluminating assertion of suspicion that is entitled to no weight in appraising the magistrate's decision."