380 A.2d 1250

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Robert J. REISINGER.**

Superior Court of Pennsylvania.

Argued March 21, 1977.

Decided Dec. 2, 1977.

3

Edgar B. Bayley, District Attorney, Carlisle, for Commonwealth, appellant.

Joseph E. Sikorsky with him Arthur K. Dils, Harrisburg, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

This is an appeal from an order of the lower court granting appellee's motion for new trial and ruling that evidence seized pursuant to a search warrant should not have been admitted at appellee's trial for possession with intent to deliver a Schedule I controlled substance.[1] The Commonwealth, unable to retry appellee without said evidence, is clearly entitled to bring this appeal. *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963). The sole issue before us is whether or not the affidavit supporting the issuance of the warrant provided a sufficient basis for

1. Act of April 14, 1972, P.L. 233, No. 64, § 1, 35 P.S. § 780–101 *et seq.* (1977).

the magistrate to determine that the affiant's informant was probably credible. We believe it did and reverse.

Judge Weidner filed an opinion and order denying appellee's pre-trial motion to suppress. The facts set forth in that opinion are as follows:

" . . . The affidavit in the present case reveals that the information leading to the application for the warrant was obtained by Officer Dougherty from one Terry Woodrow. Woodrow had been a passenger in an automobile which had been stopped for a Vehicle Code violation by Officer Donald Tappan. Officer Tappan had learned that Woodrow was a runaway from Loysville Youth Development Center and took him into custody. Approximately an ounce of marijuana was found on Woodrow at that time. Woodrow then admitted to Officer Tappan that he had purchased the marijuana and that the seller was the defendant.

"Officer Dougherty later separately conducted an interview with Woodrow, who again admitted purchasing the marijuana on February 19, 1976 and asserted that the location of the marijuana was in the kitchen cabinets of defendant's home at 120 Carol Lane, Enola, Pennsylvania and disclosed the details of the purchase, including information about the people present, the plastic bags used to package the substance, the scales used to weigh it, and the location of these items. He also indicated that defendant had approximately 25 pounds of marijuana at that time and expected to acquire more within a few days." Printed Record at 34a–35a.

On February 21, 1976, a warrant was issued and a search was conducted at appellee's residence. Approximately one and one-half pounds of marijuana was seized, along with certain other items. Charges were thereafter filed against appellee. Following appellee's conviction, the lower court en banc granted a new trial, holding that the evidence seized should have been suppressed. The Commonwealth subsequently filed this appeal.

In order to support a finding of probable cause based on an informant's hearsay, the affidavit must comply with the now familiar two-pronged test set forth in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The first requirement is an explanation of the "underlying circumstances" from which the informant received the information and reached the conclusion that fruits of a crime would be located in the place to be searched. Secondly, there must be set forth in the affidavit a reasonable basis for the affiant's belief that his informant is credible and his information reliable. *See e.g. Commonwealth v. Matthews*, 446 Pa. 65, 285 A.2d 510 (1971); *Commonwealth v. Rose*, 211 Pa.Super. 295, 235 A.2d 462 (1967). It is undisputed that the affidavit satisfied the first prong of the *Aguilar* test, since the informant received his information as a participant in a drug transaction during which he claimed to have seen the drugs in appellee's possession. The question remains whether or not the second prong of the test, regarding credibility, was satisfied. We believe it was.

The portion of the affidavit dealing with the affiant's belief that the informant was credible appears as follows:

"It is this officers (sic) belief that Terry Lynn Woodrow is being completely truthful because after being caught in the possession of marijuana and being a runaway from Loysville he reasonably believed that the only way to help himself was to cooperate with the police and inform the police as to the person who sold him the marijuana." Printed Record at 28a.

In examining this affidavit, it behooves us to recall, as Justice Frankfurter pointed out in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), that the magistrate issuing the warrant " . . . need not have been convinced of the presence of narcotics [at the place to be searched] . . . ," rather, there need only be a " . . . *substantial basis* for him to conclude that narcotics were *probably* present . . . " *Id.* at 271, 80 S.Ct. at 736 (emphasis added). Additional guidelines for reviewing cases such as this were provided in *United States v. Ventres-*

*ca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), where the Court stated:

" . . . when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* at 109, 85 S.Ct. at 746 (citation omitted).

The leading case concerning the reliability half of the two-prong *Aguilar* test is *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). That case, as reviewed by this court on several occasions, sets forth the following four factors which should be considered in determining whether or not there is a substantial basis for crediting the hearsay contained in the affidavit:

"(1) Did the informant give prior reliable information?

"(2) Was the informant's story corroborated by any other source?

"(3) Were the informant's statements a declaration against interest?

"(4) Does the defendant's reputation support the informant's tip?"

*Commonwealth v. Ambers,* 225 Pa.Super. 381, 386, 310 A.2d 347, 350 (1973); *see also, Commonwealth v. Falk,* 221 Pa.Super. 43, 290 A.2d 125 (1972).

We do not believe that the above-listed factors were intended by the *Harris* Court to be the only factors which could conceivably provide a basis for crediting the hearsay. To apply this "checklist" in a mechanical manner would deprive a reviewing court of the opportunity to use its "common sense," as urged by the Court in *United States v. Ventresca,* supra. In keeping with this view, we have never required all four of these factors to be present in order to support the magistrate's determination of credibility. *Com-*

*monwealth v. Barrett,* 233 Pa.Super. 523, 335 A.2d 476, *allocatur refused,* 233 Pa.Super. *xxxvi* (1973).

The Commonwealth argues, and we agree, that the statements made by the informant, Terry Woodrow, were declarations against penal interest and that alone supplied a sufficient basis for crediting those statements, since "[t]he case law is clear that when a person is an admitted participant in a crime, and the police attempt to secure a warrant upon the information received from him, the second aspect of the Supreme Court's test is met, since the fact that the individual admits participation in the crime insures his reliability." *Commonwealth v. Matthews,* supra 446 Pa. at 70, 285 A.2d at 512 (citations omitted).

We held in *Commonwealth v. Rose,* supra, that an informant's self-incriminating statement concerning a drug transaction was sufficiently reliable to justify issuance of the warrant, since the statement was against the informant's interest. Appellee argues, and the lower court agreed, that the informant's statements in this case, while incriminating were not against his penal interest since he had in any event been caught "red handed" with drugs in his possession, and that by incriminating appellee, the informant was hoping to gain favorable treatment in his own case. We disagree. Indeed, most self-incriminating statements made by an admitted participant in an illegal act are made in hope of receiving favorable treatment from the police or the prosecutor. The Supreme Court specifically ruled in *United States v. Harris,* supra, that the fact that an informant is promised a "break" if he comes clean does not necessarily lessen the inherent credibility of a statement admitting criminal conduct.

While it is true that having been apprehended with drugs in his possession, the informant might have been convicted of possession solely on that evidence alone, his statement admitting guilt was nonetheless against his penal interest, since it worked to deprive him of the numerous defenses which can be asserted to a possession charge. We believe that there was a substantial possibility the informant's

statements would later be used against him in legal proceedings, and that alone justified a finding that the statements probably were credible.

■ There is an additional element we believe should be considered in the common sense appraisal mandated by *United States v. Ventresca*, supra, despite the fact that it is not among the oft-cited factors set forth in *Harris*. Assuming the young informant's statements were made in hope of getting a break from the authorities, we believe that he *probably* would not lie to the very people he wished to ingratiate common sense requires the conclusion that if the informant expected special treatment, he knew it wouldn't be forthcoming if he led the police on a wild-goose chase.

We must pay heed to the reminders of the *Jones* and *Harris* courts and recognize that the magistrate need only deal in probabilities, and that a much smaller quantum of facts is necessary to support the issuance of a warrant then is necessary to support a criminal conviction. We believe there was a substantial basis from which the magistrate could determine that Terry Woodrow was probably telling the truth, and that the warrant was properly issued. The evidence seized was therefore admissible.

Order reversed.

SPAETH, J., files a concurring opinion.

HOFFMAN, J., files a dissenting opinion.

SPAETH, Judge, concurring:

I have concluded that the affidavit in support of the warrant was sufficient, but for different reasons than the majority's.

I cannot join the majority's opinion because I think Judge HOFFMAN correct in his conclusion that the informant's statement was not a declaration against penal interest; I also think him correct in his conclusion that none of the four factors identified in *Commonwealth v. Ambers*, 225 Pa.Super. 381, 310 A.2d 347 (1973), is present. I further cannot

join the majority's opinion because it stands for the proposition (implicitly if not explicitly) that the mere fact of arrest confers on the person arrested an aura of veracity. However, I agree with the majority that the four factors are not the only factors to be considered, but that we should look at all of the circumstances of each particular case. When I look at all of the circumstances here, I am persuaded that the district justice was justified in issuing the warrant.

In *Commonwealth v. Purcell*, 251 Pa.Super. 545, 380 A.2d 914 (1977); this court summarized the test to be applied by an issuing authority, in deciding whether to believe a hearsay statement in an affidavit, as follows:

> [T]he issuing authority must by reference to the information in the affidavit be able to answer two questions: (1) Do I have enough information to warrant the belief that the informant *could* know what the officer says she told him she knew? And (2) If I do have enough such information, do I also have enough information to warrant the belief that she *did* know it?
>
> 251 Pa.Super. at 550, 380 A.2d at 917.

Here, the affidavit starts by reciting that on February 21, 1976, at about 1:00 a.m. Officer Donald Tappan found the marihuana on the informant, Terry Lynn Woodrow, and was told by Woodrow that he had purchased the marihuana from appellee. The affidavit goes on to recite that Woodrow was committed to the county prison to await the action of the authorities of the Loysville Youth Development Center, which he had run away from, and that at about 9:50 a.m. the affiant, Officer Richard Dougherty, and Officer Charles Gulick went to the prison to question Woodrow. The affidavit then says that this is what Woodrow told the two officers:

> [O]n Thursday the 19th of February, 1976 he was in the company of Robert J. Reisinger of 120 Carol Lane, Enola, Penna. and one Frederick Miller of Marysville, Pa. During the course of a discussion Woodrow mentioned that he wanted to buy some marijuana and that Reisinger replied that he had some marijuana he would sell to him. Accord-

ing to Woodrow all three of them (Woodrow, Reisinger, and Miller) drove to the Reisinger home at 120 Carol Lane, Enola, Penna. where they entered the rear kitchen door. Others present in the home at that time was a young child and another woman believed to be Reisinger's wife. According to Woodrow, Mr. Reisinger opened one of the kitchen cabinets (which Woodrow believes were painted white and revealed a large heavy-duty green garbage bag which was inside this cabinet. Woodrow stated that Reisinger reached into this bag and produced a plastic bag containing approx. ¼ pound of marijuana. Reisinger was heard to ask his wife where the scales were and then produced a set of weighing scales from another drawer or cabinet in the kitchen. Reisinger then weighed out an ounce of marijuana, handed it to Woodrow, and Woodrow in return gave him $15.00. Woodrow informed us that Robert Reisinger had informed him that he still had approx. 25 pounds of marijuana remaining in the plastic trash bag which was in the kitchen cabinets. Reisinger also told Woodrow that he was expecting another shipment of marijuana on Saturday the 21st of Feb., 1976) Reisinger also told Woodrow that he gets this marijuana from a truck driver.

I admit that Woodrow might have made up all of this detail, simply to give credence to "an otherwise bald and unconvincing narrative." [1] Nevertheless, I think the district justice was justified in concluding that Woodrow had been in appellee's kitchen and therefore *could* know what it was like inside. In fact, I do not understand that there is any real difference of opinion about this. The difference of opinion is about whether the district justice was justified in concluding that Woodrow *did* know what it was like inside appellee's kitchen, that is, was telling the truth.

Woodrow twice identified appellee as the person from whom he purchased the marihuana: to Officer Tappan, and later, without Tappan being there, to Officers Dougherty and Gulick. Both times he gave appellee's address. In his

---

1. My apologies to Pooh-Bah in the *Mikado.*

second statement he identified Frederick Miller as having been with him when he purchased the marihuana. Also in his second statement he specified in detail certain features of appellee's kitchen. In short: he was consistent in his accounts to the police, and he told them a story that could easily be disproved if it was false.

In *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), the Supreme Court held that a federal narcotics agent had probable cause to arrest the petitioner without a warrant where the agent had prior to the arrest personally verified detailed information given to him by an informant regarding the petitioner. Crucial to the Court's holding was the fact that the informant was known to the agent and had supplied reliable information to him in the past. Here, the officers had had no prior dealings with Woodrow. Therefore, the details supplied in Woodrow's statements to the officers cannot be considered *by themselves* sufficient to establish Woodrow's veracity. However, when one considers Woodrow's statements in the context of the circumstances set out above, and when one adds the facts that Woodrow was a juvenile, already in trouble with the law, and with no apparent reason to lie about appellee, it seems to me that the district justice was justified in concluding that Woodrow was telling the truth.

HOFFMAN, Judge, dissenting:

The Majority correctly states that the sole issue before us is whether or not the affidavit supporting the issuance of the search warrant provided a sufficient basis for the magistrate to determine that the affiant's informant was credible. Because I believe that the affidavit did not sufficiently demonstrate the informant's credibility, I dissent and would affirm the order of the lower court en banc granting appellee's motion for a new trial.

*Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), set forth two requirements which an affidavit must meet before a magistrate can

properly issue a search warrant: (1) the affidavit must show the underlying circumstances from which the informer received his information and determined the location of the items in issue, and (2) the affidavit must show the underlying circumstances from which the officer-affiant concluded that his informant was credible. *See also Commonwealth v. Ambers*, 225 Pa.Super. 381, 310 A.2d 347 (1973). In analyzing the second *Aguilar-Spinelli* prong, our Court has repeatedly focused on the following four factors:

"(1) Did the informant give prior reliable information?

"(2) Was the informant's story corroborated by any other source?

"(3) Were the informant's statements a declaration against interest?

"(4) Does the defendant's reputation support the informant's tip?"

*Commonwealth v. Ambers*, supra 225 Pa.Super. at 386, 310 A.2d at 350. *See also Commonwealth v. Herron*, 243 Pa.Super. 319, 365 A.2d 871 (1976); *Commonwealth v. Kaschik*, 235 Pa.Super. 388, 344 A.2d 519 (1975); *Commonwealth v. Samuels*, 235 Pa.Super. 192, 340 A.2d 880 (1975); *Commonwealth v. Abbruzzese*, 223 Pa.Super. 452, 302 A.2d 853 (1973); *Commonwealth v. Falk*, 221 Pa.Super. 43, 290 A.2d 125 (1972). *See also United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Commonwealth v. Matthews*, 446 Pa. 65, 285 A.2d 510 (1971). All four factors need not be present in order to validate an officer-affiant's estimation of an informant's credibility. *Commonwealth v. Samuels*, supra; *Commonwealth v. Barrett*, 233 Pa.Super. 523, 335 A.2d 476, allocatur refused, 233 Pa.Super. XXXVI (1973). Indeed, the Pennsylvania Supreme Court has ruled that an informant's declaration against penal interest standing alone may adequately insure his reliability. *Commonwealth v. Matthews*, supra.

In the instant case, the Majority concludes that the following passage of the affidavit established the informant's credibility:

"It is this officers (sic) belief that Terry Lynn Woodrow is being completely truthful because after being caught in the possession of marijuana and being a runaway from Loysville he reasonably believed that the only way to help himself was to cooperate with the police and inform the police as to the person who sold him the marijuana." According to the Majority, this excerpt constituted a declaration against penal interest because informant admitted his willful participation in a drug transaction, *Commonwealth v. Matthews,* supra, and thus stripped himself of possible defenses to a possession charge.[1] However, in *Commonwealth v. Matthews,* the informant's admission of participation in the crime was the major and perhaps only evidence linking him to the crime; a willingness to inculpate oneself under these circumstances might well betoken reliability. By contrast, the police in the instant case caught the informant "redhanded" with possession of marijuana as he was running away from the Loysville Youth Development Center. After his arrest, the informant was, in effect, a worm on a legal hook. In order to wiggle off this hook, the informant may well have decided to focus the attention of the police on someone else by implicating appellee as his drug supplier. Indeed, the affidavit excerpt quoted above implicitly concedes that the informant's statements were motivated by a desire to escape his legal dilemma rather than by a wish to ease his conscience through confession. Under these circumstances, the informant's subsequent statements should not be viewed as reliable simply because they might technically be classified as declarations against penal interest.[2] In

1. The Majority does not specify which defenses the informant might have utilized had he remained silent. I note that an entrapment defense would have been most improbable because the police caught the informant with mere possession of marijuana rather than during a possibly staged drug transaction. The informant's statements also severely compromised potential defenses of mistake or unconscious possession, but it is probable that the informant either did not know of these putative defenses or recognized their frivolousness at the time of his apprehension.

2. *Commonwealth v. Colon,* 461 Pa. 577, 337 A.2d 554 (1975), cert. denied 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976) raises a

short, I am not persuaded that the affidavit establishes the informant's reliability under *any* of the four standards employed by our Court. *Commonwealth v. Herron,* supra.

Finally, I cannot agree with the Majority that the informant, even if caught "red-handed", probably would not lie about the identity of his drug supplier. A person caught with drugs in his possession might very well conceal the true identity of his seller because of a fear of retribution, a desire to protect his source for future transactions, or bonds of friendship and loyalty.[3] Moreover, an informant who was in

serious question as to whether the informant's identification of appellee as his seller may properly be considered a declaration against penal interest. In *Colon,* one Hernandez confessed to a murder and burglary. At the end of his confession, Hernandez stated in response to a police question: "I was alone. I went there alone and came out alone." 461 Pa. at 580, 337 A.2d at 556. The Commonwealth subsequently prosecuted Colon as an alleged accomplice in Hernandez's criminal exploits. In an effort to establish that Hernandez acted alone, the defendant attempted to introduce Hernandez's confession. The trial court denied this motion on the grounds that the statement was inadmissible hearsay. The Supreme Court affirmed the conviction. Justice ROBERTS, in a plurality opinion joined by two other Justices, stated that declarations against penal interest were admissible in Pennsylvania court, but the portion of Hernandez's confession that exculpated Colon was not against the declarant's penal interest because that portion did not subject Hernandez to additional charges or more severe punishment. Therefore, the exculpatory portion of the confession did not have the safeguards of trustworthiness attributed to a statement truly against interest. *See also Commonwealth v. Mitchell,* 245 Pa.Super. 562, 369 A.2d 770 (1977), in which our Court applied *Commonwealth v. Colon* to hold a non-inculpatory portion of a declarant's confession inadmissible in another person's trial.

A similar analysis can be applied to the informant's statements in the instant case. The portion of the informant's statements admitting his purchase of marijuana may technically be a declaration against penal interest to the extent that it acknowledges the essential element of intent to possess marijuana, but informant's designation of appellee as his supplier was not a declaration against penal interest. If the non-inculpatory portion of the confession in *Colon* was deemed inadmissible because unreliable, we cannot consistently find that the non-inculpatory portion of the informant's statement in the case at bar was so reliable as to afford probable cause without the assistance of any other evidence or allegations bolstering the informant's reliability.

**3.** The Majority asserts that a person in police custody who hoped to receive lenient treatment would not lead the police on a wild goose

fact his own supplier might find it expedient to inculpate another. Because I believe that the affidavit did not sufficiently establish the informant's reliability, I dissent.

chase. In *Commonwealth v. Abbruzzese,* supra, we implicitly rejected this contention. In *Abbruzzese,* a person under arrest for a burglary accused Abbruzzese of committing unrelated crimes. We stated that the informant's accusations "could not be used to support any criminal charge against him, but . . . could be construed . . . as given in a self-serving manner in an effort to ameliorate his own situation, . . ." 223 Pa.Super. at 455, 302 A.2d at 854. We held that the informant's charges did not bear sufficient reliability to validate an affidavit. Similarly, in the instant case, I believe that the informant's statements were made in a self-serving manner in order to ameliorate his situation.