462 A.2d 1366

COMMONWEALTH of Pennsylvania

v.

David J. FISHER, Appellant.

COMMONWEALTH of Pennsylvania

v.

Robert W. FISHER, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 17, 1981.

Filed July 8, 1983.

Alan Berman, Pittsburgh, submitted a brief on behalf of appellants.

Kemel Alexander Mericli, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CERCONE, President Judge, and HESTER, CAVANAUGH, BROSKY, McEWEN, BECK and JOHNSON, JJ.

McEWEN, Judge:

Each of the two appellants brings to this court a direct appeal from the judgments of sentence imposed after they were each found guilty of violations of the Controlled Substance, Drug, Device and Cosmetic Act.[1] We affirm.

Pittsburgh police applied for and were issued a search warrant for the residence of appellants at 913 Southside Avenue in Pittsburgh on January 25, 1978, after they received information from an unnamed informant that a man by the name of Fisher was engaged in the sale of large quantities of marijuana and was expecting to receive a large shipment late in the evening on January 25, 1978. Seven members of the Narcotics Division of the Pittsburgh Police Department took part in the execution of the search warrant on January 27, 1978 at approximately 11:30 a.m. During the course of the search of the suite of rooms occupied by appellant Robert Fisher, his wife and child and appellant David Fisher, the younger brother of Robert Fisher, police seized in excess of nine pounds of marijuana in addition to various items of drug paraphernalia. Appellant Robert Fisher admitted that the nine one pound bags that were found in the combination living/bedroom he occupied with his wife belonged to him. The police found, in the bedroom where the clothes of David Fisher were located, 160 grams of marijuana in a total of ten individually wrapped packets together with drug paraphernalia, including a small scale and various brands of cigarette papers as well as $540.00 in cash and a slip of paper characterized as an "owe sheet". Appellants were arrested and charged

---

1. 35 P.S. § 780–101 *et seq.* Appellant David Fisher was found guilty of possession of and possession with intent to deliver controlled substances and was sentenced, on December 4, 1978, to two years probation on each count with sentences to run concurrently. Appellant Robert Fisher was charged with seven counts of violations of the Controlled Substance, Drug, Device and Cosmetic Act and was found guilty of six of the counts. Judgment on four of these six counts was subsequently arrested upon disposition of the post-trial motions and he was sentenced on the remaining two counts of possession and possession with intent to deliver controlled substances (marijuana) to sixteen to thirty-two months in prison.

with violations of the Controlled Substance, Drug, Device and Cosmetic Act.

After a non-jury trial before the learned Judge Loren Lewis, appellants were each ultimately convicted[2] of possession of and possession with intent to deliver controlled substances (marijuana) and sentenced.

Appellants argue: (1) that the information contained in the search warrant affidavit did not contain sufficient facts from which the magistrate could conclude that there was probable cause to believe contraband was on the premises to be searched; (2) that the search warrant did not contain sufficient facts from which the magistrate could conclude that the informant was credible or his information reliable; and (3) "that the court erred in finding that the magistrate discharged his constitutional duty of neutrality and detachment in determining to issue a search warrant where the application ... contained obvious, serious and material discrepancies of fact on its face." Appellant David Fisher, individually, argues that the circumstantial evidence upon which the Commonwealth relied was insufficient to establish beyond a reasonable doubt that he possessed the marijuana seized with the intent to deliver.

The thrust of the initial argument of appellants is that the first prong of the *Aguilar/Spinelli* two prong test for determining the validity of affidavits of probable cause in search warrants was not met because the affidavit did not contain sufficient underlying circumstances and facts from which the magistrate could independently conclude that there was probable cause to believe contraband would be found on the premises to be searched. The text of the affidavit of probable cause states:

> Affiant has received information from a confidential reliable informant, that narcotics can be found in the above residence. Informant also states that during the week of Jan. 9, 1978 he was with a acquaintant (sic) in the above residence and did observe the sale of 2 lb. of marijuana by Mr. Fisher, to the acquaintant.

2. See Note 1, *supra*.

Informant further states that he again was in the residence on the date of Jan. 25, 1978, with the acquaintant, at which time the acquaintant requested 2 lb. of marijuana from Mr. Fisher, who stated that at this time he had only one lb. and that was sold, but he (Mr. Fisher) would have 20 lbs. delivered to him late in the evening of Jan. 25, 1978.

This information was relayed to the detectives, by the informant on the date of Jan. 24, 1978 at approx. 8:30 p.m.

Informant has proven to be reliable in the past with information that had led to the arrest of the following persons, for violation of the narcotics laws. (Louis Esposito 1/6/78 Marijuana pills, Emmett Rowlett 11/4/77 Heroin/Demeral [sic], Thomas Warren 12/12/77 Marijuana/Cocaine.)

The basis for the initial claim arises in part from the first paragraph of the affidavit where the affiant related that, on January 9, 1978, the informant was in the premises at 913 Southside Street with an acquaintance and that he observed Mr. Fisher sell two pounds of marijuana to the acquaintance. Appellants argue that even if a sale of controlled substances, namely, marijuana, had actually taken place seventeen days prior to the issuance of the search warrant, that information by itself is so remote in time from the time of the application that it is stale and thereby insufficient to sustain a finding of probable cause to believe that contraband would be present on the premises at the time of the application for the warrant.

Appellants further argue that the second paragraph of the affidavit—in which the informant indicated that Mr. Fisher stated that he had possession of only one pound of marijuana that had already been sold but that he would have twenty pounds delivered to him late in the evening of January 25, 1978—did not provide sufficient facts to establish or permit the inference that any marijuana would be found on the premises on January 26 or 27, 1978. Appellants urge in support of this argument that the informant

did not say (1) "that he (Fisher) sold even one pound on January 25, 1978" or (2) "that even one pound was in the house" or (3) "that the twenty pounds were to be delivered to Fisher at the house." Hence, they argue that there were insufficient facts set forth in the affidavit to conclusively establish the nexus between the evidence to be seized and the place to be searched.

■ We are not persuaded by either argument. The affidavit reveals that the informant witnessed the purchase of two pounds of marijuana by an acquaintance in the residence of appellants designated in the application as 913 Southside Avenue, Pittsburgh during the week of January 9, 1978. While this information, alone, might arguably be considered too stale to provide probable cause to believe that marijuana would be present on the date the warrant was executed, the affidavit further indicates that the informant was again at the same residence on January 25, 1978, with the acquaintance who *again* requested two pounds of marijuana from Mr. Fisher. The affidavit reveals that Fisher stated that he had only one pound at that time, that the particular pound had already been sold but that he would have an additional twenty pounds delivered to him late in the evening on that same day, January 25, 1978. Thus, when the two paragraphs in the affidavit are read in conjunction with each other in a common sense and non-technical fashion, *United States v. Ventresca*, 380 U.S. 102, 108–109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965); *Commonwealth v. Forster*, 253 Pa.Super. 433, 385 A.2d 416 (1978); *Commonwealth v. Matthews*, 446 Pa. 65, 71, 285 A.2d 510, 512 (1971), it would appear that even though the location of the amount of marijuana to be delivered was not specified, it was highly reasonable to conclude that the marijuana would be located and available for delivery in the same premises as it had been on the prior occasion, especially in light of the obvious absence of mention of any alternative location for the potential delivery. *See e.g., Commonwealth v. Yucknevage*, 257 Pa.Super. 19, 390 A.2d 225

(1978); *Commonwealth v. Forster, supra; Commonwealth v. Frye,* 242 Pa.Super. 144, 363 A.2d 1201 (1976).

As this court stated in *Commonwealth v. Forster, supra,* 253 Pa.Super. at 437–438, 385 A.2d at 418:

> The law does not require that the information in a warrant affidavit establish with absolute certainty that the object of the search will be found at the stated location, nor does it demand that the affidavit information preclude that the sought after article is not secreted in another location.
>
>> We must further be mindful 'that only the probability, and not a prima facie showing of criminal activity is the standard of probable cause, *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223 [228], 13 L.Ed.2d 142 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, *McCray v. Illinois,* 386 U.S. 300, 311, 87 S.Ct. 1056 [1062], 18 L.Ed.2d 62 (1967); that in judging probable cause magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741 [745], 13 L.Ed.2d 684 (1965); and that their determination of probable cause should be paid great deference by reviewing courts. *Jones v. United States,* 362 U.S. 257, 270–271, 80 S.Ct. 725 [735–736], 4 L.Ed.2d 697 (1960).' *Spinelli, supra,* 393 U.S. 410 at 419, 89 S.Ct. 584, at 590, 21 L.Ed.2d 637 at 645. *Commonwealth v. Frye,* 242 Pa.Super. 144, 148, 363 A.2d at 1201, 1203 (1976).

We conclude that the search warrant affidavit contained sufficient facts to provide a reasonable and logical basis to believe that marijuana would be found in the residence of appellants at the time of the application for and execution of the search warrant.

█ Appellant next argues that the mere allegation in the affidavit of probable cause that the informant was reliable and that information he had provided had led to these prior arrests alone, without resulting convictions, was

not sufficient to permit a conclusion that the informant was credible or his information reliable in conformity with the second prong of the two-prong test set forth in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). We reject this argument. This precise issue was recently addressed in an en banc opinion, *Commonwealth v. Prosdocimo*, 308 Pa.Super. 187, 454 A.2d 84 (1982), in which we concluded that an assertion in an affidavit of probable cause for a search warrant that an informant had proved to be reliable in the past, together with the assertion that the informant provided information which led to the arrest of two specific individuals on certain dates within six months of the arrest at issue, was sufficient to meet the requirements of the second prong of the *Aguilar* test. The information here set forth in the affidavit of probable cause provides an even *stronger* indicia of the reliability of the informant since it establishes (1) that the information the informant has provided in the past has led to the arrest of three individuals (2) whose names are specifically provided (3) together with the specific types of narcotics that they possessed at the times of their arrests. In addition, the affidavit established that all three of the prior arrests were made between twenty days and two and one-half months prior to the instant arrest, a fact that would preclude, under ordinary circumstances, an allegation that the information provided had led to convictions. Where, as the record here reflects, an informant is "new" and his information has not yet led to convictions but has resulted only in arrests, due to ordinary time constraints in bringing an accused to trial, there is no requirement that we find as a matter of law that the informant is unreliable. As we stated in *Prosdocimo, supra;* "[W]hile past reliability is most often established through a showing of convictions which resulted from information supplied by the informer, there is no logical reason for mandating that all information lead to convictions before reliability is established." *Id.*, 308 Pa.Superior at 199, 454 A.2d at 90, quoting *Commonwealth v. Benjamin*, 260 Pa.Super. 1, 6–7, 393 A.2d 982, 985 (1978); *Commonwealth v. Archer*, 238 Pa.Super. 103, 109, 352 A.2d 483, 486 (1975).

*Benjamin* presented a situation analogous to the one we here address and, in *Prosdocimo,* we quoted therefrom with approval: "Appellee [Benjamin] makes much of the fact that three named prior arrests did not result in convictions until after appellee's arrest. Our research, however, uncovers no case which holds that an informant must have provided information in the past that led to arrests and *convictions.* Nor do we find a requirement that any given number of arrests and convictions is necessary." *Id.* 308 Pa.Super. at 199, 454 A.2d at 90, quoting *Benjamin, supra* 260 Pa.Super. at 6, 393 A.2d at 985. Rather, "[t]he essential fact is that the informant gave prior information implicating other persons in criminal activity, which information proved to be correct." *Commonwealth v. Benjamin, supra,,* 260 Pa.Superior at 7, 393 A.2d at 985. The informer here provided, within two and a half months prior to the affidavit we study, information that proved to be correct and led to the arrests of three named individuals for violations of the Controlled Substance, Drug, Device and Cosmetic Act, specifically possession of various enumerated controlled substances. Indeed, the reliability of the instant informant is clearly enhanced by the very fact of the number and recency of the arrests made on the information he provided. Thus, we here conclude that the affidavit contained sufficient facts to establish the reliability of the informant. *See Commonwealth v. Prosdocimo, supra; Commonwealth v. Benjamin, supra; Commonwealth v. Archer.*

■ Appellants further claim that the apparent inconsistency in the dates set forth in the second and third paragraphs of the affidavit were such that the magistrate, in the discharge of his duties of neutrality and detachment, should have rejected the affidavit as nonsensical and required the affiant to redraft it and, since he did not do so, we should declare the affidavit as well as the search warrant invalid. Appellant argues that the interpretation adopted by the suppression judge that construed the third paragraph to be the second and the second paragraph as the

third went beyond a "common sense interpretation" and amounted to an interpretation totally at odds with the statements set forth in the affidavit. We do not agree with appellants that the internal inconsistency in the ordering of the paragraphs was so serious as to require the rejection of the application for the search warrant and find no basis to reject the conclusion of the learned Judge James R. McGregor serving as the suppression judge that the only reasonable way in which the affidavit could be read so that it made sense was to conclude that the second and third paragraphs were inverted inadvertently. As was stated in the *United States v. Ventresca, supra:*

> When a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a common sense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or of marginal cases in this area should be largely determined by the preference to be accorded to warrants. *Id.,* 380 U.S. at 109, 85 S.Ct. at 746, 13 L.Ed.2d at 689. (citations omitted)

*Accord, Commonwealth v. Gelfont,* 264 Pa.Super. 96, 399 A.2d 414 (1979), *cert. denied,* 444 U.S. 930, 100 S.Ct. 273, 62 L.Ed.2d 188 (1979); *Commonwealth v. Forster, supra.* Since the interpretation accorded the affidavit by the Common Pleas Court Judge was reasonable, we conclude that the magistrate, in approving the application for the search warrant, did not violate his constitutional mandate to serve as a neutral and detached arbiter of the existence of facts sufficient to constitute probable cause for the issuance of search warrants.

Finally, appellant David Fisher, individually, argues that the Commonwealth failed to present sufficient evidence to support his conviction of possession of marijuana with intent to deliver. We disagree.

The police found 160 gms. of marijuana and a total of ten individually wrapped packets located in the bedroom where appellant stored his clothing and was permitted to dress

immediately after the execution of the search warrant. Nine of the baggies were found inside a green canvas bag that was located inside a chifforobe where appellant David Fisher stored his clothing. An additional individual plastic baggie was found in the same room inside another chest of drawers together with a cigar box containing various brands of cigarette papers, a small hand-type scale as well as $540.00 in cash together with a small slip of paper which was described as an "owe sheet" by police. That slip of paper contained names and "had marks on it for various amounts of monies." (N.T. p. 51). When one of the arresting officers confronted David Fisher with the cash after he had been given his *Miranda* warnings, appellant stated that the cash "was not all dope money" but that part of it was social security money.

It is well established that all the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with the intent to deliver. *Commonwealth v. Hunt*, 256 Pa.Super. 140, 147–149, 389 A.2d 640, 644 (1978), citing *Commonwealth v. Santiago*, 462 Pa. 216, 340 A.2d 440 (1975). Although David Fisher was charged with possessing 160 grams or about 5 ounces of marijuana, we are, nevertheless, persuaded that the circumstances surrounding that possession clearly allow an inference that the marijuana was possessed with the intent to deliver. The circumstances present in this case include (1) the fact that the marijuana found in the room was equally divided into a number of small plastic baggies customarily used in the packaging of marijuana for sale and stored inside a green canvas bag in the chifforobe where appellant's clothes were located; (2) the fact that a small scale, commonly used in the weighing and preparation of marijuana for sale, was found in the chest of drawers in the same room; (3) the presence of various items of paraphernalia including a number of different brands of cigarette papers, roach clips and smoking pipes in the chest of drawers in the room; and, most significantly, (4) an "owe sheet" and a considerable amount of money which appellant implicitly admitted was, at least in part, "dope money".

Thus, we conclude that the evidence was clearly sufficient to allow the inference that appellant possessed the marijuana with the intent to deliver. *See Commonwealth v. Hunt, supra; Commonwealth v. Cash,* 240 Pa.Super. 123, 367 A.2d 726 (1976).

Judgments of sentence affirmed.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting:

I respectfully dissent. The majority holds that the first prong of the *Aguilar/Spinelli* [1] test was met by the search warrant affidavit in the instant case. I disagree.

The affidavit stated:

Affiant has received information from a confidential reliable informant, that narcotics can be found in the above residence. Informant also states that during the week of January 9, 1978 he was with an acquaintant [sic] in the above residence and did observe the sale of 2 lb. of marijuana by Mr. Fisher, to the acquaintant.

Informant further states that he again was in the residence on the date of January 25, 1978, with the acquaintant, at which time the acquaintant requested 2 lb. of marijuana from Mr. Fisher, who stated that at this time he had only one lb. and that was sold, but he (Mr. Fisher) would have 20 lbs. delivered to him late in the evening of January 25, 1978.

This information was relayed to the detectives, by the informant on the date of January 24, 1978 at approx. 8:30 p.m.

Informant has proven to be reliable in the past with information that had led to the arrest of the following persons, for violation of the narcotics laws. (Louis Esposito 1/6/78 Marijuana pills, Emmett Rowlett 11/4/77 Heroin/Demeral [sic], Thomas Warren 12/12/77 Marijuana/Cocaine.)

---

**1.** *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

The first prong of the *Aguilar/Spinelli* test is an explanation of the "underlying circumstances" from which the informant received information and reached the conclusion that fruits of a crime would be located in the place to be searched. *Commonwealth v. Reisinger*, 252 Pa.Super. 1, 380 A.2d 1250 (1977). *See also Commonwealth v. Matthews*, 446 Pa. 65, 285 A.2d 510 (1971).

When an issuing authority has found probable cause to issue a search warrant, this court should not invalidate that warrant by interpreting the affidavit in a hypertechnical rather than a commonsense manner. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Rather, we must test and interpret the affidavit in a realistic fashion, resolving doubtful or marginal cases by the preference accorded to warrants. *Commonwealth v. Nycz*, 274 Pa.Super. 305, 418 A.2d 418 (1980). We must also afford great deference to the issuing authority's determination of probable cause. *Spinelli v. United States, supra. See also Commonwealth v. Edwards*, 493 Pa. 281, 426 A.2d 550 (1981).

Unfortunately, my review of the instant affidavit cannot justify its validity through any commonsense analysis.

At the suppression hearing, the suppression judge made the following observations, on the record:

> ... I am satisfied that there is enough information for the Magistrate to believe that this informant was reliable because of the arrests in a short period of time on related matters. I am not concerned at all about his reliability. The only thing that does concern me, and this comes from the face of it, as far as I'm concerned, is the 24th date of January. And *the only reasonable reading, if we are to believe the affidavit, is that paragraph should have been Paragraph 2 and not Paragraph 3. That's the only way that it makes any common-sense reading,* because it's impossible for me to tell you what's going to happen tomorrow at 8:30 this evening. That's impossible. *So the only way that whole thing makes sense at all is that we put that paragraph in as Paragraph No. 2,* that

that information was conveyed to the detectives, the information about the 9th sale was conveyed to the detectives on the 24th. So, *that's the only reasonable reading you can give it.* I don't think that's a strained reading at all. *You know, when you first read it, why, you have to be troubled by it.*

Notes of Testimony, August 25, 1978, p. 28 (emphasis added).

On the very same issue, the trial judge, in his opinions written pursuant to Pa.R.A.P. 1925(a), supported his denial of post-trial motions with respect to the validity of the search warrant as follows:

> With respect to the Application, defendant also complains that serious discrepancies of fact appear on its face. He refers to reference in the body of the Application to January 25, 1978, as the date when the informant was on the premises and the additional reference that the foregoing information was given to the detectives on January 24, 1978, the day before. *No doubt this discrepancy was the result of a typographical error.* A reasonable, commonsensible reading of the Application must lead to this conclusion.[2]

As I read the suppression hearing transcript and the opinions filed pursuant to Rule 1925(a), I find it likely that two judges of the common pleas court examined the same application but arrived at somewhat different conclusions. On the one hand, the suppression court felt that the *only* way the application made sense was to invert the second and third paragraphs. On the other hand, the post-trial motion judge concluded that the discrepancy "was the result of a typographical error."

While I have no difficulty in agreeing with the majority that a "commonsense" approach must be applied in reviewing an application for a search warrant, the fact that two different trial court judges arrived at different conclusions,

2. *Commonwealth v. David J. Fisher,* No. CC 7800885A, Common Pleas, Allegheny County, Opinion of Lewis, J., filed June 21, 1979, at page 3 (emphasis added). Same paragraph, *Commonwealth v. Robert W. Fisher,* No. 7800886A, *Id.,* at page 3.

while each was applying their "common sense," causes me to pause. I assume that our freedom to apply a common-sense rationale when reviewing the action of an issuing magistrate entails a belief that ordinary men would *agree* on the interpretation to be given a document under review.

The majority finds "no basis to reject the conclusion of the [suppression judge]" and further determines that the interpretation accorded the affidavit by the suppression judge was "reasonable." The majority stops short of asserting that the idea of inverting two paragraphs in a sworn affidavit comports with its own "common sense." Nor does the majority seek to explain the conclusion of the trial judge which, arguably, is at variance with that of the suppression judge on the proper interpretation of the affidavit.

The second paragraph of the affidavit states that the informant had been in Appellant's residence on January *25th*. The third paragraph states that this information was relayed to the affiant on January *24th*. I agree with the suppression hearing judge that such a chronology is impossible. As it stands, it cannot be said to be susceptible to any single, commonsense interpretation.

The mere fact that an obvious error exists is not fatal to this affidavit until one acknowledges the importance of the error. If the third paragraph is simply deleted, then the affidavit fails to inform the issuing authority as to when the information was obtained from the informant. On the other hand, if the second paragraph is deleted, then the information that remains is deficient, as it is too remote in time to support the issuance of a warrant. *See Commonwealth v. Hagen*, 240 Pa.Super. 444, 368 A.2d 318 (1976).

I am not prepared to accept the majority's suggestion that the magistrate was compelled to either accept the application, as submitted, or "require the affiant to redraft it." In the first place, nothing would have prevented the affiant from merely correcting the date in the second paragraph to show the presence of the informant in the suspect's residence on January 24th. This could have been done and the application again tendered to the magistrate. But more importantly, I view the responsibility of the

issuing magistrate to be limited to finding probable cause prior to the issuance of any search warrant. As an issuing magistrate, his duty does not include insuring that the arresting officials are in no way inconvenienced as they seek to perform their own duties.

The issue before our court should not be whether, applying some balancing test, the magistrate's action was reasonable, but rather whether the affidavit, as submitted, presented sufficient facts to provide a reasonable and logical basis to believe that marijuana would be found in Appellant's residence at the time of the application for and execution of the search warrant. *Aguilar, supra.*

Although I do not view the error in the affidavit to be as severe as that found in *Commonwealth v. Purcell,* 251 Pa.Super. 545, 380 A.2d 914 (1977), I believe it more serious than the technical errors determined not to be fatal in the affidavits in *Commonwealth v. Swint,* 256 Pa.Super. 169, 389 A.2d 654 (1978) and *Commonwealth v. Chinea,* 246 Pa.Super. 494, 371 A.2d 944 (1977).

Since I am unable to conclude that any issuing authority could find probable cause from the statements constituting the affidavit, as they appear, I must respectfully dissent. *See* Pa.R.Crim.P. 2003(a).