418 A.2d 582

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Henry George CHATMAN.**

Superior Court of Pennsylvania.

Submitted April 10, 1978.

Filed Feb. 6, 1980.

Charles W. Johns, Assistant District Attorney, Pittsburgh, for Commonwealth, for appellant.

Bruce A. Carsia, Pittsburgh, for appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PER CURIAM:

The six judges who heard this appeal being equally divided, the order is affirmed.

CERCONE, President Judge, files an opinion in support of affirmance in which HOFFMAN and SPAETH, JJ., join.

VAN der VOORT, J., files an opinion in support of reversal in which PRICE and HESTER, JJ., join.

JACOBS, former President Judge, did not participate in the consideration or decision of this case.

CERCONE, President Judge, in support of affirmance:

This is an appeal by the Commonwealth [1] from the order of the court below granting appellee's motion to suppress evidence that had been seized pursuant to a warrant. Believing the affidavit in support of the search warrant to be constitutionally infirm, we would affirm.

On January 7, 1977, Officer Joseph Saunders of the Wilkinsburg Police Department appeared before a local magistrate and obtained a search warrant for appellee's residence. The affidavit in support of probable cause recited as follows:

"The affiant received information from a reliable informant who in the past has been very knowledgeable about the narcotics traffic in the Wilkinsburg area, this informant now states that at 1362 Singer Pl. that Heroin is

1. It is, of course, well-settled that the Commonwealth is entitled to appeal a suppression order which substantially impairs the presentation of its case. *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963), *cert. denied*, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963); *Commonwealth v. Gullet*, 459 Pa. 431, 329 A.2d 513 (1974).

now being stored and sold by a C/M known to him as Henry Chatman. This informant also states that he and a friend were in the residence within the past 48 hrs. and his friend did purchase from Henry Chatman, three ½ spoons of Heroin for $75.00 and his friend did inject into his arm one of these ½ spoons of Heroin. Friend stated the dope was very good and also while the informant was in this residence an unknown B/M did purchase a ½ oz. of Heroin from Henry Chatman and then this unknown B/M did leave and Henry Chatman stated to the informant that (he) Henry Chatman could handle all the dope that the informant and his friend wanted and the price would get better when the informant and his friend became steady people. *This informant has given information in the past which led to the arrest of Curtis Williams and Earl Montel.*" (Emphasis added.)

The sole issue raised on this appeal is whether the averment that the informant's prior information led to the arrests of certain named individuals is sufficient to establish the informant's credibility.

In *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the United States Supreme Court delineated the constitutional guidelines for issuing a search warrant when probable cause is based on hearsay information.

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant . . . the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed . . . was 'credible' or his information 'reliable.'" (citations omitted.) *Aguilar v. Texas,* 378 U.S. at 114–15, 84 S.Ct. at 1514.

8

Instantly, it is not disputed that the first facet of *"Aguilar's two-pronged test"*[2] is satisfied. What is at issue, however, is the second prong of the test; namely, the informant's credibility or the reliability of his information. In deciding whether this second prong has been met we have identified four factors to be considered: "(1) Did the informant give prior reliable information? (2) Was the informant's story corroborated by any other source? (3) Were the informant's statements a declaration against interest? (4) Does the defendant's reputation support the informant's tip?" *Commonwealth v. Ambers*, 225 Pa.Super. 381, 386, 310 A.2d 347, 350 (1973); *Commonwealth v. Archer*, 238 Pa.Super. 103, 352 A.2d 483 (1975). In the case at bar, the Commonwealth concedes that the only factor of the above four that it can rely upon is the first one. Thus, the Commonwealth maintains that an assertion in an affidavit that the informant's prior information led to arrests of named individuals is sufficient—in and of itself—to establish the credibility and reliability of the informer.[3] We are constrained to conclude otherwise.

**2.** *Spinelli v. United States*, 393 U.S. at 413, 89 S.Ct. at 587.

**3.** Both the parties to this appeal, the lower court, and this court on past occasions, have mistakenly viewed this issue in terms of the informant's "reliability" as opposed to his "credibility." While both of these terms are related in the sense that they serve as alternative methods for establishing the veracity of the hearsay information, it facilitates analysis to bear in mind the distinction between the two. As one distinguished commentator has observed: "There is, to be sure, an element here of debating how many angels can stand upon the head of a pin. Arguably, supporting facts which show that an informant's information is 'reliable' thereby show also, that the informant is, on, that occasion at least, 'credible.' The 'credibility' of the person and the 'reliability' of his information are but facets of the same 'veracity' phenomenon. Unless the alternative phraseology in *Aguilar* is meaningless, however, the Supreme Court appears to feel that there is some value in grouping approaches to veracity into two separate, albeit related, subcategories. It would appear that an informant's 'credibility' involves more his inherent and ongoing character as a person—his reputation as a truth–speaker or his demonstrated history of truth–speaking. Informational 'reliability,' on the other hand, as something distinct from the 'credibility' of the source, would seem to involve circumstances assuring trustworthiness on the particular occasion of the information's being furnished." Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer*, 25 Mercer L.Rev. 741, 761 (1974) [hereinafter Moylan].

It is axiomatic that the two–pronged test enunciated in *Aguilar* was "designed to implement the long–standing principle that probable cause must be determined by a 'neutral and detached magistrate,' and not by 'the officer engaged in the often competitive enterprise of ferreting out crime.'" *Spinelli v. United States*, 393 U.S. at 415, 89 S.Ct. at 588, quoting from *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed.2d 436 (1948). *Aguilar* further teaches that "[a]lthough the reviewing court will pay substantial deference to judicial determinations of probable cause, the court must still insist that the magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." *Aguilar v. Texas*, 378 U.S. at 111, 84 S.Ct. at 1512. Thus, if the constitutional protection afforded by interposing a "neutral and detached magistrate" between the police and the public is to have substance, the magistrate must be provided with enough concrete information to be able to make an independent and informed judgment.

Instantly, we are of the opinion that the unadorned allegation that the informant's prior information led to arrests does not permit the magistrate to discharge his constitutional function of exercising an independent and informed judgment. *See Commonwealth v. Bailey*, 460 Pa. 498, 333 A.2d 883 (1975). While it is clear that it is not necessary that all information result in convictions to establish credibility, *Commonwealth v. Archer, supra*, it is equally true that "[t]he essential fact is that the informant gave prior information implicating other persons in criminal activity, *which information proved to be correct*." *Commonwealth v. Benjamin*, 260 Pa.Super. 1, 6–7, 393 A.2d 982, 985 (1978) (Emphasis added). An affidavit, such as in the case at bar, which merely states that the informer supplied prior information leading to the arrest of two individuals, cannot suffice to establish credibility because there is no indication that the "information proved to be correct." In other words, as Professor LaFave has explained: "[t]he mere statement that the police decided to arrest because of what this informant said on a prior occasion does not indicate whether that

decision was lawful or whether anything learned incident to or following the arrest verified what the informant had said." 1 W. R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.3, at 514 (1978). For all that appears in the instant affidavit, Williams and Montel may have been acquitted and the information furnished against them by the informant may have proven totally false. On the other hand, it may be that prosecutions were pending against Williams and Montel, or that the prosecutions were dismissed for reasons unrelated to the veracity of the informant's information. Whatever the case may be, the critical fact is that the unadorned assertion that the informant previously supplied information which prompted arrests leaves the magistrate "intellectually crippled in terms of making the informed judgment contemplated by the fourth amendment." *Moylan, supra* note 3, at 759.

Although we would hold that the instant warrant does not pass constitutional muster because the bald allegation that the informant's prior information led to arrests fails to demonstrate the informer's credibility; this does not mean that arrests will be deemed insufficient even when viewed with related circumstances. To reiterate, the essential issue is not the type or quantity of information supplied to the magistrate, but whether the raw data allows the magistrate to form an independent and informed judgment as to the informant's credibility. Thus, it is conceivable that arrests alone could establish credibility provided the magistrate is furnished with enough relevant information concerning those prior arrests. In this connection:

"It would be meaningful to tell the magistrate when the information had been furnished. It would be meaningful to tell the magistrate whether, as a result of the arrests, evidence was turned up which the informant indicated would be turned up. It would be meaningful to tell the magistrate whether the information from the informant was the exclusive predicate for the arrests, or whether it was but a minor contributing factor considered along with many other factors. It would be meaningful to tell the

magistrate whether those earlier arrests had ever been ruled upon, in terms of their legality and in terms of the adequacy of the probable cause upon which they were based. If the informant was, indeed, deemed credible for purposes of those earlier arrests, why not furnish the magistrate now the supporting facts which made the informant credible then? That data would be unquestionably relevant on the issue of current credibility. It would be meaningful to tell the magistrate whether the informant had always furnished good information or not." Moylan, supra note 4, at 758–59. See also *Kraft v. State*, 16 Md.App. 347, 297 A.2d 328, 331 (1972); *Dawson v. State*, 14 Md.App. 18, 284 A.2d 861, 871 (Md.1971) (Moylan, J., concurring).

The instant affidavit, however, is devoid of any relevant details pertaining to the arrests of Williams and Montel. Nor does the affidavit contain any other indices of trustworthiness, such as police verification or a declaration against interest, that would permit the magistrate to find the informant credible or his information reliable. *See, e. g., Commonwealth v. Dial*, 445 Pa. 251, 285 A.2d 125 (1971); *Commonwealth v. Herron*, 243 Pa.Super. 319, 365 A.2d 871 (1976); *Commonwealth v. Archer, supra* ; *Commonwealth v. Ambers, supra.* Accordingly, the magistrate was not furnished with sufficient information to make the independent and informed judgment required by the Fourth Amendment.

The order of the lower court should be affirmed.

HOFFMAN and SPAETH, JJ., join in this opinion.

VAN der VOORT, Judge, in support of reversal:

I disagree with the position taken by three members of our Court that the affidavit did not contain sufficient information concerning the underlying circumstances from which the affiant concluded that the informant was credible or that his information was reliable.[1]

1. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

12

In *United States v. Muckenthaler*, 584 F.2d 240, 244 (8th Cir. 1978), the court stated: "The affidavit discloses the reasons for the affiant's belief in the reliability of the informant. It recites that the informant had been proven reliable on numerous occasions in the past three months. The fact that an informant has previously given accurate information establishes his reliability." "It is well established that a warrant based on an affidavit reciting that an undisclosed informant had given reliable information to police in the past is sufficient to establish reliability." *United States v. Hunley*, 567 F.2d 822, 825 (8th Cir. 1977). Accord, *United States v. Cummings*, 507 F.2d 324 (8th Cir. 1974), rehearing denied December 18, 1974; and *United States ex rel. Rigsbee v. Parkinson*, 407 F.Supp. 1019 (S.D.1976). The affidavit in the case before us recites: "The affiant received information from a reliable informant who in the past has been very knowledgeable about the narcotics traffic in the Wilkinsburg area . . . .. This informant has given information in the past which led to the arrest of Curtis Williams and Earl Montel." I would find that this information satisfied the part of the *Aguilar* test in question.

The magistrate's decision must be based on a common–sense reading of the entire affidavit. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). I believe that the affidavit in the case before us, read as a whole, contains sufficient indicia of reliability. Requiring elaborate specificity in a police officer's affidavit unduly weakens police work while contributing nothing to the protection of innocent individuals. I would reverse the order of the lower court.

PRICE and HESTER, JJ., join in this opinion.