454 A.2d 84

**COMMONWEALTH of Pennsylvania**

v.

**Richard PROSDOCIMO, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 17, 1981.

Filed Dec. 17, 1982.

Petition for Allowance of Appeal Denied June 21, 1983.

188

Norma Chase, Pittsburgh, for appellant.

Kemal Alexander Mericli, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CERCONE, President Judge, and HESTER, CA-VANAUGH, BROSKY, McEWEN, BECK and JOHNSON, JJ.

McEWEN, Judge:

We here provide an en banc review of the contention of appellant that the search warrant which resulted in the presentation of demonstrative evidence at his trial was not based upon probable cause. We disagree and affirm the judgment of sentence.

Appellant was found guilty by the distinguished Allegheny County Common Pleas Court Judge James F. Clarke, sitting without a jury, of violation of that section of the Uniform Firearms Act[1] which prohibits a former convict from owning or possessing a gun and of violation of the Controlled Substance, Drug, Device and Cosmetic Act[2] and was sentenced, after the denial of timely filed post-verdict motions, to serve a term of imprisonment of from one to two years. Appellant initiated an appeal to this court and contended, *inter alia*, that the search of his apartment conducted pursuant to the instant search warrant was illegal. Appellant bases his contention that the search warrant

1. 18 Pa.C.S.A. § 6105.

2. 35 P.S. 780–113(a)(16).

was illegal upon the claim that the affidavit of probable cause did not set forth such underlying circumstances as would enable the magistrate to conclude the informant was credible or his information reliable. A careful concentration upon the basic notions of the Fourth Amendment and upon the recent landmark decisions interpreting that Amendment, however, lead us to conclude that there was probable cause for the issuing authority to issue the search warrants.

This case began when Pittsburgh Narcotics Detective Barry Fox, together with his colleagues, applied for a warrant so as to permit the search for and seizure of "Controlled substances and paraphernalia used to package and administer the same, To Wit Dilaudid and any papers and/or documents used to establish residency and I.D." that might be found in a (1) specific unit of a multiple apartment dwelling at a (2) specific address which was (3) the residence of appellant. The detective stated in the section that is captioned—

Probable cause belief is based on the following facts and circumstances:

The affiants were given information by person who has benn [sic] reliable in the past that Rick Prosdecimo is concealing and dispensing Dilaudids from his apt. The informant has observed this activity on a number of occasions in the past and as late as the week of 2–6–77. The informant has just been talking with Rick and Rick told the informant that he has 500 D's on hand right now and that he was waiting for a number of persons to come to the apt. now to buy some. The informant stated that we should hit it this night as he would sell most of them tonight as he was going to turn tomorrow. By turn the affiants know he means purchase more of them for sale.

Information from this informant has resulted in the arrest of Charles Connors of 159 Greenfield Ave. on 9–29–76 and the arrest of Robert Mahaven of 1680 Skyline Dr. on 2–17–76.

Because Rick may sell out tonight the affiants are requesting a night time search warrant to be issued.

The detectives who were the affiants failed in the recitation to refer to a prior court proceeding in which testimony indicated appellant had been sent as an "enforcer" to the West Coast to collect money [3] and to a previous conviction upon charges of rape, sodomy and robbery which resulted in the imprisonment of appellant in a State Correctional Institution.[4] And while the recitation also failed to supply more precise details concerning the status of the two cases in which information from this informant had resulted in arrests, this recitation does set forth the specific dates upon which such arrests occurred as well as the names of the individuals arrested and their addresses. As a result, this case can be distinguished from *Commonwealth v. Chatman*, 275 Pa.Super. 5, 418 A.2d 582 (1980) which saw this court determine there was a lack of probable cause for the warrant since the affidavit was totally barren of relevant information concerning the previous arrests.

The execution of the search warrant by the police officers is described in the opinion of the trial judge as follows:

The warrant was obtained and executed the same day in the Greenfield section of Pittsburgh. While the officers were at the unopened door they heard a telephone bell ringing in the apartment and overheard a male voice speaking as on the telephone and saying, 'Do you think they are coming up here—are they already in the building?' The officers knocked and made appropriate announcements and the same male voice was heard to say, "Wait a minute." The telephone was hung up. The officers waited and knocked again. Sounds of movement were heard inside, but not coming toward the door, whereupon force was used to gain entry to the apartment. The defendant was observed at an open window as some object was seen going out through the window.

---

**3.** Opinion of the Common Pleas Court at Page 6.

**4.** *Id.* at 8.

Execution of the warrant and a search produced:

1. A .25 calibre automatic pistol.
2. A box of 50 rounds of .25 calibre bullets.
3. A blue and red ski mask.
4. A pair of man's gloves.
5. A pair of sap gloves (leaded).
6. A sum of $4,015.00 in U.S. currency.
7. Five white Rorer 714 tablets.
8. Nineteen white scored tablets.
9. One blue and green capsule.
10. Twenty-six blue ciba tablets.
11. Forty-two yellow Ortho tablets.

Item No. 6, the $4,015.00, was found in two bundles in cash in pockets of a bathrobe hanging in a closet in the apartment. As mentioned above, this money was returned to the defendant prior to trial by order of the Administrative Judge.

The defendant admitted his possession of methaqualone tablets and the cash but disclaimed any proprietary interest in the bullets or the gun.

The control of the defendant over the premises appeared to be indisputable. He was making use of the telephone and receiving calls; he had a key to the apartment; he was comfortable enough and secure enough there to have over $4,000.00 cash in the pocket of a bathrobe hanging in the closet; he acknowledged pills of his found on a table; he received a visit from a man while on the premises; he answered a telephone call from his girlfriend while there; he himself telephoned other persons to request them to secure the apartment since he would be vacating it in custody of the police; and called his landlord to come and fix the door and then he called his brothers to come over and stay. (R. 89).

The premises was described as an efficiency apartment consisting only of one room and bath—a small place.

Pittsburgh police officer McCauley (R. 93) found the pistol in a holster on the street next to the curb, a

distance of 'two parking meters' from the apartment window at which defendant had been seen as some 'object' was going out through the window.

Defendant's girlfriend had obtained the telephone number for the apartment two months prior to defendant's arrest (R. 118) indicating this was not his first use of or visit to the place. The defendant said he himself put the $4,015.00 cash in the pockets of the robe in two bundles (R. 125). Defendant acknowledged that the 'dianobol' pills he had were used in connection with weight lifting exercises and that the methaqualone were used for sleeping pills. (R. 127).

(Lower Court opinion at 2–4).

The Fourth Amendment proclaims:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Two landmark decisions interpreting this sacred provision of the Bill of Rights, *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), are the key cases for our discussion of the primary issue of this appeal.

There seems to be unanimous acceptance by the appellate judges of this Commonwealth of *Aguilar's* "two-pronged test":

Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of affiant, ... the magistrate must be informed of some of the underlying circumstances from which informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed ... was credible or his information reliable. (citations omitted).

378 U.S. at 114–15, 84 S.Ct. at 1514, 12 L.Ed.2d at 729. See, *Commonwealth v. Davis*, 466 Pa. 102, 351 A.2d 642 (1976); *Commonwealth v. Greco*, 465 Pa. 400, 350 A.2d 826 (1976); *Commonwealth v. Milliken*, 450 Pa. 310, 300 A.2d 78 (1973); *Commonwealth v. Matthews*, 446 Pa. 65, 285 A.2d 510 (1971); *Commonwealth v. Minton*, 288 Pa.Super. 381, 432 A.2d 212 (1981); *Commonwealth v. Turner*, 284 Pa.Super. 395, 425 A.2d 1161 (1981); *Commonwealth v. Luddy*, 281 Pa.Super. 541, 422 A.2d 601 (1980); *Commonwealth v. Prokopchak*, 279 Pa.Super. 284, 420 A.2d 1335 (1980); *Commonwealth v. Albert*, 264 Pa.Super. 390, 399 A.2d 1106 (1979); *In re Burton*, 259 Pa.Super. 20, 393 A.2d 696 (1978); *Commonwealth v. Forster*, 253 Pa.Super. 433, 385 A.2d 416 (1978); *Commonwealth v. Reisinger*, 252 Pa.Super. 1, 380 A.2d 1250 (1977); *Commonwealth v. Herron*, 243 Pa.Super. 319, 365 A.2d 871 (1976); *Commonwealth v. Scavincky*, 240 Pa.Super. 550, 359 A.2d 449 (1976); *Commonwealth v. Kaschik*, 235 Pa.Super. 388, 344 A.2d 519 (1975); *Commonwealth v. Samuels*, 235 Pa.Super. 192, 340 A.2d 880 (1975). The *Aguilar* decision includes a reiteration of the very basic and clearly established principle of constitutional law that any decision as to whether probable cause exists, so that a warrant should issue, must be made by an issuing authority rather than by a police officer. *Id.* "When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent." *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948).

■ Thus we see that it is the magistrate or issuing authority who is to make the *conclusion* that *probable cause exists.* The decision of the magistrate follows his consideration of the information and data supplied to him by the affiant who, in most cases, as well as in this case, is not the primary source of information. Since hearsay can be received in this proceeding before the magistrate, a substantial basis for crediting the hearsay must be presented. *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d

697 (1960); *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *See Commonwealth v. Falk*, 221 Pa.Super. 43, 290 A.2d 125 (1972). It is the *Aguilar-Spinelli* cases that specifically describe how that required substantial basis may be presented.

The United States Supreme Court selected the term "two-pronged test" for describing the applicable standard of scrutiny. The focus of the inquiries by which the two separate tests are conducted have been very aptly analyzed in a superb treatise by Maryland Court of Special Appeals Judge Charles E. Moylan, Jr.[5] and can be described as:

> *The magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were. Aguilar, supra* at 114–115. This test, says, Judge Moylan calls upon the magistrate to evaluate the adequacy of the premises for the conclusions of the informant and requires the magistrate to judge the logic of the position of the informant. This inquiry might well be expressed: Is the informant *mistaken* with regard to his conclusions?

> *The magistrate must be informed of some of the underlying circumstances from which the officer concluded that the informant ... was credible or his information reliable. Aguilar, supra* [378 U.S.] at 114–115 [84 S.Ct. at 1514]. The magistrate here, in the view of Judge Moylan, is called upon to evaluate the truthfulness of the informant and is required to judge his integrity. The inquiry might well be expressed: Is the informant *lying?*

See *Moylan, supra* at 750.

Appellant here does not dispute the adequacy of the affidavit with regard to the first prong. Nor could he since the informant actually observed the activity "on a number of occasions", including a recent occasion, and since the informant had "just been talking with the appellant."

**5.** Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer,* 25 Mercer L.Rev. 741 (1974).

Rather, appellant disputes the adequacy of the second-prong and so states on page 12 of his brief:

> Appellant does not dispute that the affidavit adequately explained how the informant reached his conclusions, as required by *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The other requirement of *Aguilar* —that the affidavit demonstrate the informer's reliability —was, however, not met instantly.

■   Appellant does not precisely express, however, this requirement of *Aguilar* when he states the affiant must "demonstrate the informer's reliability"; rather, the test required for this second-prong permits the issuing authority to complete the evaluation of the informant by a conclusion *either* that the informant was credible *or* that his information was reliable. *See Aguilar, supra; Spinelli, supra.*

What do we, as a review court, know about this transaction? We know the magistrate did not refuse the application for a warrant and we thereby infer he concluded either that the informant was credible or that the information from the informant was reliable. It was only necessary for him to reach one of those two conclusions and we know not—nor must we—whether in this instance the magistrate reached only one conclusion and, if so, which one or both. The thrust of our determination is to inquire whether it was possible for the magistrate to have been satisfied of either.

What did the issuing authority know about this transaction? The record shows the magistrate was aware of the following data:

> Detective Barry Fox, one of the applicants for the warrant, is a member of the Narcotics Division of the Pittsburgh Police Department.[6]

> The crime for which the search warrant was sought was violation of the Narcotics laws.

6.   The Opinion of the trial judge at page 2 so describes one of the affiants, Detective Fox. It is not conceivable that the magistrate did not know of the special police duties of affiants especially since the affiants translate in the affidavit the drug world term "turn".

The informant was considered reliable, a conclusion of the police, but, nonetheless, a conclusion of police specializing in narcotics investigations and seeking a warrant for narcotics violations, a factor which the magistrate could well include in the bases for a conclusion that the informant was credible.

The application for warrant did not specify a number of illegal substances as the object of the search, nor even a particular class of substances as the object of the search, but rather provided a quite specific identification of one particular substance, namely: Dilaudid.

The informant had not simply supplied information on one earlier occasion, that had led to merely an investigation, but had earlier supplied information that (1) twice (2) resulted in arrests of (3) specific individuals (4) on two specific occasions separated by six months (5) within the past year.

It was necessary to proceed in urgent fashion.

■ The duality of the two-pronged *Aguilar* test requires two separate analyses, each with a different focus, but there does not appear to be any valid practical or legal reason why consideration of a particular factor must be restricted to but one of the two analyses. For that reason, therefore, any information that may have been considered during the analysis for the basis of knowledge prong may also be considered during the analysis for the veracity prong.[7] We here have an informant who has (1) previously observed not only the concealment but also (2) the dispensing of Dilaudids (3) on a number of occasions (4) including such activity within the past forty-eight hours and has also just learned (5) from the drug dealer himself that (6) sales are about to take place (7) at the premises which is the subject of the warrant. Can there be any doubt that the abundance as well as the specificity of the information supplied by the informer had a certain impact upon the

7. The treatise of Judge Moylan, see footnote 5, *supra,* so distinguishes the two prongs.

issuing authority as he determined whether the informant was credible or his information reliable?

This court in *Commonwealth v. Ambers*, 225 Pa.Super. 381, 310 A.2d 347 (1973), delineated—and reiterated in a number of subsequent opinions—four criteria set forth by the United States Supreme Court in *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), which may be considered by the issuing authority in an evaluation of whether there is a substantial basis for accepting the information of an informant:

(1) Did the informant give prior reliable information?

(2) Was the informant's story corroborated by any other source?

(3) Were the informant's statements a declaration against interest?

(4) Does the defendant's reputation support the informant's tip?

*Id.*, 225 Pa.Super. at 385, 310 A.2d at 350; *See Commonwealth v. Mazzochetti*, 299 Pa.Super. 447, 445 A.2d 1214 (1982); *In re Burton, supra; Commonwealth v. Reisinger, supra; Commonwealth v. Herron, supra; Commonwealth v. Kaschik, supra; See also Commonwealth v. Falk, supra.*

This court has made clear, however, that the affiant need not satisfy the magistrate of all four of those criteria. *See Commonwealth v. Herron, supra; Commonwealth v. Ambers, supra.* The majority of the panel of this court which earlier considered the instant case concluded that the warrant was improperly issued because none of those criteria were satisfied in this case and that it had not been shown "that the informant's prior implication, in criminal activity, of the two persons who had been arrested had been accurate." (majority opinion at 86). The panel majority relied upon *Commonwealth v. Benjamin*, 260 Pa.Super. 1, 393 A.2d 982 (1978) as authority for the finding that the issuing authority did not have a substantial basis for crediting the hearsay contained in the affidavit and therefore improperly

issued the search warrant. We, on the other hand, find, quite to the contrary, that *Benjamin* provides a firm basis for concluding that the arrest of two individuals as a result of information from this informant satisfied the initial criterion set forth in *Commonwealth v. Ambers, supra,* namely, the informant did give prior reliable information. It is true that the decision of this court in *Benjamin* was a three to two decision but our esteemed colleague, Judge Gwilym A. Price, Jr. firmly declared for the majority that furnishing information leading to arrests is a satisfactory prior performance of reliability:

> Appellee [Benjamin] makes much of the fact that three named prior arrests did not result in convictions until after appellee's arrest. Our research, however, uncovers no case which holds that an informant must have provided information in the past that led to arrests *and* convictions. Nor do we find a requirement that any given number of arrests and convictions is necessary. *Id.,* 260 Pa.Super. at 6, 393 A.2d at 985. (emphasis in original).

In *Benjamin,* Judge Price quoted with approval the opinion of this court in *Commonwealth v. Archer,* 238 Pa.Super. 103, 109, 352 A.2d 483, 486 (1975):

> While past reliability is most often established through a showing of convictions which resulted from information supplied by the informer, there is no logical reason for mandating that all information lead to convictions before reliability is established (citations omitted).

*Benjamin, supra* 260 Pa.Super. at 6–7, 393 A.2d at 985. He construed the language of *Archer* to mean that "past 'investigative leads' that proved reliable and accurate were a sufficient indicator of the informant's reliability" and explained the rationale for the holding that it is not necessary that an informant have provided past information that lead to arrests *and* convictions thus:

> The essential fact is that the informant gave prior information implicating other persons in criminal activity, which information proved to be correct. 260 Pa.Super. at 7, 393 A.2d at 985.

While it is true, as the majority of the earlier panel notes, the information in *Benjamin* had been corroborated by police surveillance, the *Benjamin* majority determined that the "reliability" of the informant has been adequately established before any consideration of the corroborative police surveillance.

Such corroboration would not seem to be so basic a prerequisite in the instant factual situation, a search by warrant, as it would be in the *Benjamin* factual situation, an arrest based upon probable cause without warrant. The distinction between activity with a warrant and activity without a warrant is of basic importance in light of the specific declaration of the United States Supreme Court in *Aguilar:*

> Thus, when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,' and will sustain the judicial determination so long as 'there was substantial basis for [the magistrate] to conclude that narcotics were probably present.'

*Aguilar v. Texas, supra* 378 U.S. at 111, 84 S.Ct. at 1512, 12 L.Ed.2d at 726 (quoting *Jones v. United States,* supra 362 U.S. at 270–271, 80 S.Ct. at 736, 4 L.Ed.2d at 708).

While this does not mean that the scrutiny of an appellate court may be less incisive when it seeks to determine whether probable cause existed for the issuance of a search warrant, it does seem reasonable to assert that we should display, during appellate review, a certain hesitancy to disturb a finding of the existence of probable cause. It is to be remembered that the instant affidavit, found by the magistrate to be sufficient, was also determined to be adequate by the Common Pleas Judge who heard, considered and ruled upon the suppression application.

We do not here accept the affidavit of probable cause as a model or endorse it as a form or recommend it as the standard or suggest it as a guide, nor do we decree that

issuing authorities in the Commonwealth must or should be so quickly persuaded or so easily convinced. Rather, we simply hold that the issuing authority in this case had a sufficient basis for a determination that the informant was credible or his information reliable.

Our refusal to find that the issuing authority lacked a sufficient basis for this determination is certainly consistent with the statement of the United States Supreme Court in *Spinelli v. United States, supra,* 393 U.S. at 419, 89 S.Ct. at 591, 21 L.Ed.2d at 645, that,

> ... in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 688 (1975); and that their determination of probable cause should be paid great deference by the reviewing courts, *Jones v. United States,* 362 U.S. 257, 270–271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697, 707–708 (1960),

as well as with the proposal of that court in *United States v. Ventresca, supra* 380 U.S. at 108–109, 85 S.Ct. at 746, 13 L.Ed.2d at 689:

> [T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policies served, *affidavits for search warrants ... must be tested* and interpreted *by* the magistrates and *courts in a commonsense and realistic fashion.* They are normally drafted by non-lawyers in the midst and haste of a criminal investigation. The technical requirements of elaborate specificity once exacted under common law pleadings have no place in this area. * * * This is not to say that probable cause can be made out by affidavits which are purely conclusory .... [R]ecital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of

information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hyper-technical, rather than a common sense manner. *Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubt for marginal cases in this area should be largely determined by the preference to be accorded to warrants.* Jones v. United States, supra, 362 U.S. at 270, 80 S.Ct. at 736, 4 L.Ed.2d at 707. (Emphasis supplied).

*See also Commonwealth v. Stamps,* 493 Pa. 530, 427 A.2d 141 (1981); *Commonwealth v. Edwards,* 493 Pa. 281, 426 A.2d 550 (1981); *Commonwealth v. Muscheck,* 460 Pa. 590, 334 A.2d 248 (1975); *Commonwealth v. Prokopchak, supra; Commonwealth v. Tucker,* 252 Pa.Super. 594, 384 A.2d 938 (1978); *Commonwealth v. Purcell,* 251 Pa.Super. 545, 380 A.2d 914 (1977).

The members of this court are, of course, mindful of the stressful conditions of the particular world in which local police officers must conduct an operation that necessarily places considerable reliance upon frequently shadowy sources who not only demand but also, if they are to be available for future information, require protection that is sometimes best afforded by an obscurity that appears to be inconsistent with the mandate of our courts that an affiant must establish the credibility of his informant. We are further aware that the local police departments lack the manpower, so abundantly available to their federal colleagues, that would enable the corroborative surveillance prized not only by the issuing authority at the time of application for a warrant but also by sound police practice. Nonetheless, it is urgently necessary for those harried police officers who apply for warrants to provide intense concentration toward recitation in the application of all information that is supplied to and known by the police officers but that is all too frequently omitted from the text. For example, while it is true that appellant's prior criminal

history, at least insofar as this record reflects, did not include drug activity and that an assault upon probable cause would have been launched by defense counsel for that reason, nonetheless, the police would have far better achieved had the application for a warrant contained such information about appellant. Certainly, any details in the immediate knowledge of the officers concerning the status of the prosecutions triggered by the arrests for which the instant informant supplied information should have been noted in the application for the warrant.

Our eminent President Judge William F. Cercone wisely counselled the police officers of this Commonwealth when he urged compliance with the very helpful suggestions outlined by Judge Moylan and we cannot do better than reiterate that counsel:

> It would be meaningful to tell the magistrate when the information had been furnished. It would be meaningful to tell the magistrate whether, as a result of the arrests, evidence was turned up which the informant indicated would be turned up. It would be meaningful to tell the magistrate whether the information from the informant was the exclusive predicate for the arrests, or whether it was but a minor contributing factor considered along with many other factors. It would be meaningful to tell the magistrate whether those earlier arrests had ever been ruled upon, in terms of their legality and in terms of the adequacy of the probable cause upon which they were based. If the informant was, indeed, deemed credible for purposes of those earlier arrests, why not furnish the magistrate now the supporting facts which made the informant credible then? That data would be unquestionably relevant on the issue of current credibility. It would be meaningful to tell the magistrate whether the informant had always furnished good information or not. *Moylan, supra* note 4 at 758–59. (citations omitted).

*Commonwealth v. Chatman, supra* 275 Pa.Super. at 10–11, 418 A.2d at 585.

In conclusion, the appellant does not dispute that the affidavit adequately met the first-prong of *Aguilar*, the basis of knowledge prong, and we determine there was a sufficient basis—quite ever so barely—for the second-prong, the veracity test. As a result, we conclude there was probable cause for the issuance of this warrant.

The brief of appellant also contends:

The evidence was insufficient to support the verdict on a firearms charge.

The suppression judge erred in refusing to recuse himself from presiding at trial.

A careful study of the entire record as well as of the briefs of the parties compels the conclusion that there is no merit to these contentions.

Judgment of sentence affirmed.

CERCONE, President Judge, and JOHNSON, J., concur in the result.