J-E01001-18

2018 PA Super 232

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CHARLES HOWARD MANUEL | |
| Appellant | No. 1048 MDA 2015 |

Appeal from the Judgment of Sentence entered June 3, 2015
In the Court of Common Pleas of York County
Criminal Division at No: CP-67-CR-0007220-2014

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TIMOTHY A. MANUEL | |
| Appellant | No. 1152 MDA 2015 |

Appeal from the Judgment of Sentence entered July 1, 2015
In the Court of Common Pleas of York County
Criminal Division at No: CP-67-CR-0007222-2014

BEFORE:  BENDER, P.J.E., PANELLA, J., SHOGAN, J., LAZARUS, J., OLSON,
        J., STABILE, J., DUBOW, J., KUNSELMAN, J., and MURRAY, J.

DISSENTING OPINION BY STABILE, J.:          **FILED AUGUST 23, 2018**

In this appeal from Appellant's judgment of sentence, the sole issue before this Court is whether the trial court erred in denying Appellant's motion to suppress. The Majority finds error based on its examination of the affidavit of probable cause. Because I believe the Majority did not properly apply this Court's standard of review, and also believe the Majority improperly relied upon case law pre-dating ***Illinois v. Gates***, 462 U.S. 213 (1983), and ***Commonwealth v. Gray***, 503 A.2d 921 (Pa. 1985), I respectfully dissent.

To put the issue before this Court in context, it is helpful to put the process of issuing a warrant and a review of that issuance in general terms. Simply stated, an affiant presents a sworn affidavit to the issuing authority, in this case, a magisterial district judge ("MDJ"). The MDJ uses a common sense approach to determine whether the information within the affidavit establishes a fair probability that evidence of a crime will be found in a certain location.

When the search authorized by the warrant results in the securing of evidence of a crime, an aggrieved person can seek suppression of that evidence. Giving deference to the issuing authority, the suppression court assesses whether the MDJ had a substantial basis for concluding that probable cause existed for issuance of the warrant. If the suppression court denies suppression, this Court on appeal likewise affords deference to the issuing authority. It is not the suppression court's or this Court's role to stand in the

shoes of the issuing authority and make a *de novo* determination as to issuance of the warrant.

Starting from the initial step of seeking a warrant, the application must be supported by a written affidavit that complies with Pa.R.Crim.P. 206 (Contents of Application for Search Warrant).[1]  In accordance with Pa.R.Crim.P. 203(B) (Requirements for Issuance):

_____

[1] Rule 206 provides, in relevant part:

Each application for a search warrant shall be supported by written affidavit(s) signed and sworn to or affirmed before an issuing authority, which affidavit(s) shall:

(1) state the name and department, agency, or address of the affiant;

(2) identify specifically the items or property to be searched for and seized;

(3) name or describe with particularity the person or place to be searched;

(4) identify the owner, occupant, or possessor of the place to be searched;

(5) specify or describe the crime which has been or is being committed; [and]

(6) set forth specifically the facts and circumstances which form the basis for the affiant's conclusion that there is probable cause to believe that the items or property identified are evidence or the fruit of a crime, or are contraband, or are expected to be otherwise unlawfully possessed or subject to seizure, and that these items or property are or are expected to be located on the particular person or at the particular place described[.]

No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority in person or using advanced communication technology. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.

Pa.R.Crim.P. 203(B).

"Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." **Commonwealth v. Leed**, ___ A.3d ___, 2018 WL 2452659, at *5 (Pa. June 1, 2018) (quoting **Commonwealth v. Johnson**, 42 A.3d 1017, 1031 (Pa. 2012) (internal quotation marks and citation omitted)).

Examining the initial steps of issuing the warrant and the duty of the reviewing court, our Supreme Court has explained:

It is well-established that a magistrate may not consider any evidence outside of the affidavit to determine whether probable cause exists to support a search warrant. **See** Pa.R.Crim.P. 203(B). This Court has held "[b]efore an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search . . ." and such information "must be viewed in a common sense, nontechnical, ungrudging and positive manner." **Commonwealth v. Baker**, 532 Pa. 121, 615 A.2d 23, 25 (1992). The United States Supreme Court has stated:

The task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the

Pa.R.Crim.P. 206.

circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . [concluding]" that probable cause existed.

*Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). Furthermore, probable cause is based on probability, not a *prima facie* case of criminal activity; deference should be afforded the magistrate's finding of probable cause.

*Commonwealth v. Housman*, 986 A.2d 822, 843 (Pa. 2009).

In *Commonwealth v. Ryerson*, 817 A.2d 510 (Pa. Super. 2003),

this Court reiterated:

Our standard of review for an appeal denying a motion to suppress is well settled.

In reviewing the decision of a suppression court, we must ascertain whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. We will consider only the evidence of the Commonwealth and that defense evidence which remains uncontradicted when read in the context of the entire record.

*Id.* at 513 (quoting *Commonwealth v. Johnson*, 734 A.2d 864, 869 (Pa. Super. 1999)). Further,

[i]n reviewing an issuing authority's decision to issue a warrant, a suppression court must affirm unless the issuing authority had no substantial basis for its decision. On appeal, [the appellate court] affirms the decision of the suppression court unless it commits an error of law or makes a factual finding without record support.

*Commonwealth v. Lyons*, 79 A.3d 1053, 1064 (Pa. 2013) (citing *Commonwealth v. Johnson*, 42 A.3d 10017, 1031 (Pa. 2012) and *Commonwealth v. Briggs*, 12 A.3d 291, 320 (Pa. 2011)).

The Majority states that we are "reviewing the magistrate's decision to issue [a search] warrant." Majority Op. at 5. The Majority suggests that "our duty is 'to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.'" *Id.* (quoting *Commonwealth v. Torres*, 764 A.2d 532 (Pa. 2001)). However, after correctly quoting *Torres*, the Majority ignores the directive to accord deference to the authority's probable cause determination and instead embarks on what amounts to a *de novo* review of the MDJ's issuance of the warrant.

This Court, like the suppression court, accords deference to the MDJ's finding of probable cause. *See Commonwealth v. Rapak*, 138 A.3d 666, 671 (Pa. Super. 2016) (citation omitted). However, "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236 (quotations and citation omitted). *See also Leeds*, 2018 WL 2452659, at *6 ("a magistrate's probable cause determination should receive deference from the reviewing

courts. In keeping with the Fourth Amendment's strong preference for warrants, 'courts should not invalidate . . . warrants by interpreting affidavits in a hyper[-]technical, rather than a commonsense, manner.'") (quoting *Gates*, 462 U.S. at 236). Again, the suppression court must affirm unless the issuing authority lacked any substantial basis for its decision and this Court must affirm unless the suppression court committed error of law or made a factual finding without record support. *Lyons*, 79 A.3d at 1064.

According to the affidavit of probable cause, the CI in this case provided information to the police that in the previous 72 hours he[2] had been inside Appellants' home and witnessed the growing of multiple marijuana plants, marijuana packaged for sale, and marijuana growing accessories such as growing tools, soil, a humidifier and a grow tent. This was first-hand information from a CI who was present and witnessed the criminal activity for which Appellants were charged and convicted. This was not an anonymous source, but rather a CI who previously provided reliable information to the police that led to a felony arrest. This was information that led the police to believe, based upon training and experience, that the premises were being used to grow, store, package, and prepare marijuana for the purpose of street-level sales.

---

[2] The gender of the CI is unknown. As the Majority does, we shall refer to the CI with male pronouns.

Probable cause for the issuance of a search warrant exists when there is a *fair probability* evidence of a crime will be found in a particular place. **Lyons**, 79 A.3d at 1064. Viewing the totality of the circumstances here, the issuing authority determined those facts established a fair probability that evidence of a crime would be found in the premises to be searched.

The facts notwithstanding, the Majority nonetheless insists that to establish probable cause, the police still must independently corroborate the CI's report of criminal activity. Our case law no longer supports such a mechanical application of a test for probable cause, especially where the informant's information is based upon personal observation. **See Commonwealth v. Clark**, 28 A.2d 1284, 1287-88 (Pa. 2011). Giving deference to the issuing authority's determination, it is my opinion that the affidavit of probable cause supported issuance of a warrant by a neutral and detached MDJ who found there was a fair probability evidence of a crime would be found at Appellants' residence.

In **Clark**, our Supreme Court provided an overview of the evolution of the probable cause standard.

> Prior to 1983, in order to establish probable cause for the issuance of a search warrant based on information received from a confidential informant, an affidavit of probable cause had to satisfy a two-part test [, the **Augilar-Spinelli** test]. The test required the affiant to set forth 1) the basis of the informant's knowledge; and 2) facts sufficient to establish an informant's veracity or reliability. **Spinelli v. United States**, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); **Aguilar v. Texas**, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). In 1983, the U.S. Supreme Court abandoned this "two-part" test and adopted a

> "totality of the circumstances" test. ***Illinois v. Gates***, 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).[3]  The Court held that the ***Aguilar-Spinelli*** factors were no longer rigid, independent requirements that had to be satisfied, but instead, were merely *relevant factors among the totality of circumstances necessary to show probable cause*." ***Id.***

***Id.*** at 1286-87 (emphasis added) (footnote omitted).  Under ***Gates***, "probable cause is a fluid concept that turns on the assessment of probabilities in factual contexts that are 'not readily, or even usefully, reduced to a neat set of legal rules.'" ***Id.*** at 1287-88; ***see also Rapak***, 138 A.3d at 671.  A totality of the circumstances analysis "permits a balanced assessment of relative weights of all the various indicia of reliability or unreliability of an informant's tip." ***Clark***, 28 A.3d at 1288.  Accordingly, "a CI's veracity and basis of knowledge are but factors among the totality of circumstances" to be considered. ***Id.***  Therefore, post-***Gates***, "an informant's tip may constitute probable cause where police independently corroborate the tip, **or** where the informant has provided accurate information of criminal activity in the past, **or** where the informant himself participated in the criminal activity." ***Id.*** (citations omitted) (emphasis in original).  An affidavit of probable cause is reviewed "in its entirety, giving significance to each piece of information and balancing the relative weights of all the various indicia of reliability (and unreliability) attending the tip." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1048-49 (Pa. 2012) (quoting ***Massachusetts v. Upton***, 466 U.S. 727, 732 (1984)).  Therefore,

---

[3] Our Supreme Court adopted the ***Gates*** standard in ***Commonwealth v. Gray***, 503 A.2d 921, 926 (Pa. 1985).

> [i]f, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in the locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip. Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary. **Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case**.

*Id.* at 1051 (emphasis added) (quoting *Gates*, 462 U.S. at 233-34 (citations and footnote omitted in original)).

The fluidity of the totality of the circumstances test under *Gates* does not hamstring an issuing authority from finding probable cause to issue a search warrant by insisting upon rigid criteria. Rather, an issuing authority may find that probable cause exists for a search warrant based upon whatever is presented in an affidavit of probable cause, so long as what is presented contains sufficient indicia of reliability to demonstrate there is a fair probability that contraband or evidence of a crime will be found in a particular place. *See Lyons*, 79 A.3d at 1065. Corroboration of a confidential informant's information, although very useful, is no longer always required to satisfy the dictates of probable cause. *See Commonwealth v. Jones*, 668 A.2d 114, 117 (Pa. 1995). "The suppression or exclusion of evidence is a 'most extreme remedy' that can be justified only when it is necessary to vindicate fundamental rights or to correct or deter police abuse." *Commonwealth v.*

- 10 -

*Huntington*, 924 A.2d 1252, 1259 (Pa. Super. 2007) (citing *Commonwealth v. Dennis*, 618 A.2d 972, 981 (Pa. Super. 1992)).

To illustrate, in *Jones*, a post-*Gates* plurality decision, the defendant was charged with drug offenses. *Jones*, 668 A.2d at 116. He filed a motion to suppress evidence obtained pursuant to a search warrant. *Id.* As here, the defendant alleged that the affidavit supporting probable cause contained no corroboration to ensure its reliability. *Id.* The affidavit of probable cause related that the police had information from a confidential informant who personally observed the selling of drugs upon the searched premises, the informant observed drug abusers coming and going from the premises from 3 p.m. to late evening, and the informant observed paraphernalia used to prepare powder cocaine into crack cocaine inside the premises. *Id.* The informant provided reliable information in the past leading to the arrest and conviction of one person and the arrest of two other individuals whose cases were still pending in court. *Id.* at 117. Rejecting the defendant's argument that the affidavit of probable cause required corroboration, the Supreme Court emphasized that it is the totality of the circumstances test to be employed and *that this test does not require corroboration in every situation. Id.* at 117-18. "[R]equir[ing] corroboration in every situation would be contrary to the purpose of the totality of circumstances test: allowing a flexible, common sense approach to all circumstances of an affidavit." *Id.* at 117 (citations omitted). The Court found "that the information provided by the informant

was not rumor or speculation, but was based upon direct, personal observation." **Id.** Therefore, the Court held the affidavit provided a sufficient basis of knowledge and **no** corroboration was required. **Id.** at 117-18.

Here, as in **Jones**, the information provided by the CI was based upon the CI's personal observation of criminal activity within and upon Appellants' premises reported to police within 72 hours of his observation. Prior information provided by this CI allowed the police to make a felony arrest. In concluding that the issued warrant lacked probable cause, the Majority entirely ignores the CI's first-hand observation of criminal activity that perhaps is the most significant feature of the affidavit establishing probable cause in this case. Further, the Majority does not discuss or give any credence to the affiant officer's expertise, which lent support to finding that Appellants' use of the premises was typical of a stash house for drug activity and street-level sales.

The Majority concludes that the CI's reliability was not established because he had provided only one tip leading to one still-pending prosecution. However, as the Majority recognizes, our law does not establish any talismanic number of prior instances of reporting reliable information to support probable cause. Majority Op. at 12 (citing **Clark**, 28 A.3d at 1292). Nor does our law require that the reliable information given in the past has resulted in convictions, as opposed to arrests. It is well-settled "that prior arrests attributed to information supplied by the informant need not result in convictions to establish the credibility of the informant or the reliability of his

- 12 -

information." *Commonwealth v. White*, 457 A.2d 537, 539 (Pa. Super. 1983) (citations omitted). "[T]here is no logical reason for mandating that all information lead to convictions before reliability is established." *Id.* (quoting *Commonwealth v. Archer*, 352 A.2d 483, 486 (Pa. Super. 1975)). *See also Huntington*, 924 A.2d at 1255 ("In assessing an informant's reliability, a presumption exists that the information is trustworthy when it has been provided by an identified witness") (citation omitted); *Commonwealth v. Hayward*, 756 A.2d 23, 36 (Pa. Super. 2000) ("**Identified** citizens who report their observations of criminal activity to police are assumed to be trustworthy in the absence of special circumstances.") (quoting *In the Interest of S.D.*, 633 A.2d 172, 174 n.1 (Pa. Super. 1993) (emphasis in original)). *Cf. Commonwealth v. Gindlesperger*, 706 A.2d 1216, 1226 (Pa. Super. 1997) (*see* Majority Op. at 11-12) (no probable cause for issuance of warrant based on statement in affidavit "that the informant's prior information 'will lead' to arrests, rather than stating the customary 'has in the past resulted in' arrests or convictions."). Unlike the CI in *Gindlesperger*, whose information "will lead" to arrests, the reliability of the CI here was established by the fact he was not an anonymous source and prior information provided by him had already led to a felony arrest.

In my opinion, the Majority's analysis also improperly focuses upon what is not in the affidavit as opposed to what is contained in the affidavit to support probable cause. As noted above, the Majority ignores entirely the weight and

significance the issuing authority placed upon the CI's first-hand information contained in the affidavit and instead faults the police for not taking every opportunity to pursue "any meaningful follow-up" corroboration prior to preparing the affidavit of probable cause. Majority Op. at 12.

Again, the police must support a request for a search warrant with an affidavit of probable cause. *See* Pa.R.Crim.P. 206. "The police have probable cause when the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Harvard*, 64 A.3d 690, 697 (Pa. Super. 2013) (quoting *Commonwealth v. Hernandez*, 935 A.2d 1275, 1284 (Pa. 2007)). Once presented with a request by police for a search warrant, the issuing authority makes a practical, common sense determination whether, based on the affidavit, there is a fair probability evidence will be found in a particular place. *Id.* Employing the totality of the circumstances test as outlined in *Gates* and adopted by our Supreme Court in *Gray*, a balanced assessment of the indicia of reliability of an informant's tip can be made. *See Gates*, 462 U.S. at 238-39; *Gray*, 503 A.2d at 926. "A magistrate's finding of probable cause must be based on facts described within the four corners of the affidavit[,] and our scope of review of a suppression court's ruling is confined primarily to questions of law." *Harvard*, 64 A.3d at 696 (quoting *Commonwealth v. Smith*, 784 A.2d 182, 184 (Pa. Super. 2001) (citation omitted)).

As explained above, a reviewing court does "not conduct a *de novo* review of the issuing authority's probable cause determination, but [] simply determines whether or not there is substantial evidence in the record supporting the decision to issue the warrant." ***Torres***, 764 A.2d at 540. Nevertheless, the Majority improperly conducts a *de novo* review of the information contained within the affidavit of probable cause. The Majority concludes that the police should have corroborated, or are required to corroborate substantially, the information in the affidavit of probable cause.

Here, the police were possessed of first-hand information from a reliable CI suggesting to them—based upon their training and experience—that evidence of criminal activity would be found upon Appellants' premises. Short of some suggestion that this CI was lying, the MDJ had no reason to doubt that the eyewitness information from this CI, who previously provided reliable information to police, was both credible and reliable. While more information is no doubt better than less, the determination of probable cause is to be based upon what is contained in the four corners of the affidavit and not denied upon what else may have been submitted in support of an application. Therefore, to the extent the Majority bases its decision upon what does not appear in the affidavit of probable cause, as opposed to what is contained therein, the Majority, in my opinion, has strayed from our standard of review.

Our standard of review merely requires that we determine if the record supports the suppression court's findings and if that court properly applied the

law to the facts.  *Ryerson*, 817 A.2d at 513.  Viewing all information contained within the affidavit of probable cause in a common-sense, non-technical manner, the MDJ was justified in believing that there was a fair probability that contraband or evidence of a crime would be found upon the premises.  As a reviewing court, I would conclude the suppression court did not commit legal error in finding the MDJ had a substantial basis upon which to issue this search warrant.  Therefore, this Court should affirm.  *Lyons*, 79 A.3d at 1064.

In its opinion, the Majority suggests *Commonwealth v. Chatman*, 418 A.2d 582 (Pa. Super. 1980), supports its analysis and conclusions.  Majority Op. at 14.  I find the Majority's reliance on *Chatman* misplaced and of no precedential value.  The decision in *Chatman* holds no precedential value, as the decision was issued by an evenly divided *en banc* court that serves only to affirm the result in the trial court.  *See Commonwealth v. Mosley*, 114 A.3d 1072, 1082 n.11 (Pa. Super. 2015) (citing *Commonwealth v. James*, 427 A.2d 148 (Pa. 1981) ("when a judgment of sentence is affirmed by an equally divided court . . . no precedent is established and the holding is not binding on other cases.").  Moreover, *Chatman* was decided prior to our Supreme Court's 1985 *Gray* decision adopting *Gates* and its totality of the circumstances test while discarding the *Aguilar-Spinelli* test upon which *Chatman* relies.  The issue in *Chatman* focused exclusively on the second prong of the now discarded *Aguilar-Spinelli* test that required specific findings on an informant's credibility or reliability.  *Chatman*, 418 A.2d at

584. This Court evenly split on whether there was sufficient indicia of reliability to satisfy the now discarded *Aguilar-Spinelli* test. *Id.* at 585.

In the end, despite acknowledging throughout the opinion that the determination of whether probable cause has been established depends on the totality of the circumstances, the Majority merely pays lip service to this standard. Indeed, insisting on the insufficiency of the information addressing the informant's reliability or the lack of independent corroboration by police as reasons for reversing the suppression court, the Majority *de facto* reverted to the *Aguilar-Spinelli* test, which has been long abandoned by our courts.[4]

Properly applying our standard of review exposes the flaws in the Majority's finding of suppression court error. Here, the MDJ issued a warrant based on the report of first-hand knowledge from the CI coupled with the officer's experience. Together they established a fair probability that evidence of a crime would be found at Appellants' residence. As explained above, the "task of an issuing authority is simply to make a practical, commonsense

---

[4] In his dissent in *Wallace*, Justice McCaffery noted:

> In *Clark*, we rejected the conclusion of the lower courts that the affidavit was infirm because it contained no express statement quantifying the informant's reliability or basis of knowledge, and stated that '[b]oth lower courts failed to look at the information as a whole, but examined and considered individual factors in a mechanical fashion, effectively nullifying the mandate to assess the totality of the circumstances.'

*Wallace*, 42 A.3d at 1056 (McCaffery, J. dissenting) (citing *Clark*, 28 A.3d at 1289).

decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." **Harvard**, 64 A.3d at 697 (quoting **Torres**, 764 A.2d at 537). The suppression court then denied Appellants' motion to suppress, properly according deference to the MDJ's probable cause determination and finding the MDJ had a substantial basis for concluding probable cause existed. **See id.** (citing **Torres**, 764 A.2d at 537-38). It then became incumbent on this Court to ascertain whether the record supports the suppression court's findings and to determine the reasonableness of the inferences and legal conclusions drawn therefrom. **Ryerson**, 817 A.2d at 513. Because this case turns on allegations of legal error, it is our charge to determine if the suppression court properly applied the law to the facts. **Id.**

Under our standard of review, we may reverse the suppression court's decision only if it "commits error of law or makes a factual finding without record support." **Lyons**, 79 A.3d at 1064. Finding neither, I would affirm the suppression court's order. Therefore, I dissent.

Judge Shogan, Judge Olson and Judge Murray join this Dissenting Opinion.